1   Steven M. Tindall (CA Bar No. 187862)
    smt@classlawgroup.com
2   Caroline Corbitt (CA Bar No. 305492)
    ccc@classlawgroup.com
3   GIBBS LAW GROUP LLP
    505 14th Street, Suite 1110
4   Oakland, CA 94612
    Telephone: (510) 350-9700
5   Facsimile: (510) 350-9701
6
7   John H. Douglas (CA Bar No. 178966)
    DOUGLAS LAW OFFICES
8   jdouglas@douglaslegal.com
    100 Pine Street, Suite 1250
9   San Francisco, CA 94111
    Telephone: (415) 794-4751
10  Facsimile: (415) 795-3432
11
12                   UNITED STATES DISTRICT COURT
13              FOR THE NORTHERN DISTRICT OF CALIFORNIA
14

15  J. JASON REYNOLDS,                          Case No. 4:17-cv-00204-KAW

16      Plaintiff, on behalf of himself and all
        others similarly situated,              PLAINTIFF'S NOTICE OF MOTION AND
17                                              MOTION FOR PRELIMINARY APPROVAL
                                                OF CLASS ACTION SETTLEMENT
18                   v.
                                                Date:   March 7, 2019
19  DIRECT FLOW MEDICAL, INC; DAN               Time:   1:30 p.m.
    LEMAITRE; JOHN DAVID BOYLE;                 Judge:  Hon. Kandis A. Westmore
20  GORDON BISHOP; PAUL LAVIOLETTE;
    and YUVAL BINUR,
21
22      Defendants.
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 7, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Kandis A. Westmore, Plaintiff J. Jason Reynolds will move, and hereby does move, for an Order preliminarily approving the Settlement Agreement attached as Exhibit A to the accompanying Declaration of Steven M. Tindall as fair, adequate, and reasonable; certifying the class for settlement purposes only, approving the notice and notice plan set forth in the Settlement Agreement; appointing CPT Group as the Settlement Administrator; and setting a schedule for final settlement approval.

Plaintiff's motion is based on this notice of motion and motion; the accompanying Memorandum of Points and Authorities; the Declarations of Steven M. Tindall and John Douglas and all attachments thereto (including the Settlement Agreement itself); the [Proposed] Order Granting Motion for Preliminary Approval of Class Action Settlement; and all other papers filed and proceedings had in this action.

DATED: January 31, 2019                     Respectfully submitted,

**GIBBS LAW GROUP LLP**

*By:*   */s/ Steven M. Tindall*

Steven M. Tindall
smt@classlawgroup.com
Caroline Corbitt
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone:  (510) 350-9700

**DOUGLAS LAW OFFICES**
John H. Douglas
jdouglas@douglaslegal.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 794-4751

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 2

    A.    DFM's Deteriorating Financial Situation ....................................................... 3

    B.    Class Members' Furlough and Termination ................................................... 3

    C.    Assignment for the Benefit of Creditors ......................................................... 4

III.    PROCEDURAL BACKGROUND ............................................................................ 5

IV.     TERMS OF THE PROPOSED SETTLEMENT .................................................... 6

    A.    Proposed Class ................................................................................................. 6

    B.    Benefits to the Settlement Class ...................................................................... 6

    C.    Calculation of Benefits .................................................................................... 6

    D.    PAGA Penalties ............................................................................................... 8

    E.    Notice Plan ....................................................................................................... 8

    F.    Dispute, Objection, and Opt-Out Procedures ................................................. 8

    G.    Release of Claims ............................................................................................ 9

    H.    Funding of Settlement and Payments .............................................................. 9

V.      ARGUMENT ........................................................................................................... 10

    A.    The Court Should Direct Notice to the Settlement Class ............................. 10

        1.    The Proposed Settlement Merits Approval ........................................ 11

    B.    The Class Representative and Class Counsel Have Adequately Represented
        the Class ......................................................................................................... 11

    C.    The proposed settlement was negotiated at arm's length .............................. 12

    D.    The substantial class relief weighs in favor of approval ............................... 13

        1.    The settlement provides substantial relief for the class ..................... 13

        2.    Continued litigation through trial and appeals would have entailed
            substantial costs, risks, and several years of delay ........................... 14

        3.    The Settlement provides for an effective distribution of proceeds to the
            Class ................................................................................................... 15

        4.    The requested award of attorney's fees and costs, including timing of
            payment, also support settlement approval ....................................... 16

i

5. The parties have no other agreements pertaining to the Settlement .............17

E. **The Settlement treats all Settlement Class Members equitably** ....................17

F. **The Proposed PAGA Payment is Appropriate** ...................................19

VI. **Certification of the class will be appropriate for settlement purposes**....................20

A. **The settlement class satisfies the requirements of Rule 23(a)** .........................20

1. The class members are too numerous to be joined .......................................20

2. The action involves common questions of law or fact .................................20

3. Plaintiff's claims are typical of those of the class.........................................21

4. Plaintiff and his counsel have and will continue to fairly and adequately protect the interests of the Class....................................................................22

B. **The settlement class meets the requirements of Rule 23(b)(3)** .....................22

C. **The proposed Class Notice provides the best method of notice practicable**.. 23

VII. **THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL** ..............24

**CONCLUSION** ..............................................................................................255

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

4

*Altamirano v. Shaw Indus., Inc.*,

5

No. 13-cv-00939, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ...................... 18

6

*Amchem Prods., Inc. v. Windsor*,

7

521 U.S. 591 (1997) ...................................................................................... 23

8

*Ansari v. New York Univ.*,

9

179 FRD 112 (S.D. N.Y. 1998) ...................................................................... 20

10

*Chamberlain v. Ford Motor Co.*,

11

223 F.R.D. 524 (N.D. Cal. 2004) ................................................................... 23

12

*Chu v. Wells Fargo Investments LLC*

13

Nos. C 05-4526 MHP, C 06-7924, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) .................................. 19

14

*Cicero v. DirecTV, Inc.*,

15

2010 WL 2991486 (C.D. Cal. July 27, 2010) .................................................. 18

16

*Ellis v. Costco Wholesale Corp.*,

17

657 F.3d 970 (9th Cir. 2011) ......................................................................... 22

18

*G. F. v. Contra Costa Cty.*,

19

No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................. 13

20

*Hanlon v. Chrysler Corp.*,

21

150 F.3d 1011 (9th Cir. 1998) ...............................................................21, 22, 23

22

*In re Activision*,

23

723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................... 17

24

*In re Pacific Enterprises Sec. Litig.*,

25

47 F.3d 373 (9th Cir. 1995) ........................................................................... 17

26

*In re Volkswagen "Clean Diesel" Mktg. Sales Practices & Product Liability Litigation*

27

895 F.3d 597 (9th Cir. 2018) .................................................................11, 12, 13

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

*In Re: MagSafe Apple Power Adapter Litig.*,

   No. 5:09-CV-01911EJD,  2015 WL 428105 (N.D. Cal. May 29, 2012)...............................24

*Kulesa v. PC Cleaner, Inc.*,

   No. 12-cv-0725, 2014 WL 12581770 (C.D. Cal. Aug. 26, 2014) ....................................12

*Lane v. Wells Fargo Bank, N.A.*,

C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ......................................21

*Linney v. Cellular Alaska P'ship*,

   151 F.3d 1234 (9th Cir. 1998) ...............................................................................14

*McKenzie v. Federal Express Corp.*

No. CV 10-02420 GAF (PLAx), 2012 WL 2930201 (C.D. Cal. Jul. 2, 2012) .......................20

*Millan v. Cascade Water Servs., Inc.*

   No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710, (E.D. Cal. May 31, 2016)................19

*O'Connor v. Uber Technologies, Inc.*,

   201 F. Supp. 3d 1110, (N.D. Cal. 2016) .................................................................19

*Parra v. Bashas' Inc.*,

   536 F.3d 975 (9th Cir. 2008) ...............................................................................21

*Parsons v. Ryan*,

   754 F.3d 657 (9th Cir. 2014) ...............................................................................21

*Paul, Johnson, Alston & Hunt v. Graulty*,

   886 F.2d 268 (9th Cir. 1989) ...............................................................................17

*Pierce v. Rosetta Stone, Ltd.*,

C 11-01283 SBA, 2013 WL 1878918 (N.D. Cal. May 3, 2013) ........................................18

*Rannis v. Recchia*,

   380 F. App'x. 646 (9th Cir. 2010) .........................................................................23

*Rodriguez v. Hayes*,

   591 F.3d 1105 (9th Cir. 2010) ...............................................................................21

*Sadowska v. Volkswagen Grp. of Am.*,

   No. CV 11-00665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013)...................................16

iv

*Schiller v. David's Bridal*, Inc.

  No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001(E.D. Cal. June 11, 2012) ................................... 20

*Six Mexican Workers v. Arizona Citrus Growers*,

  904 F.2d 1301 (9th Cir. 1990) ........................................................................................................... 17

*Villegas v. J.P. Morgan Chase & Co.*,

  No. CV 09-00261-SBA, 2012 WL 5878390 (N.D. Cal. Nov. 20 2012) ........................................... 14

*Wal–Mart Stores* v. Dukes,

  564 U.S. 338 (2011) ........................................................................................................................... 20

*Wolin v. Jaguar Land Rover N. Am.,*,

  617 F.3d 1168 (9th Cir. 2010) ........................................................................................................... 22

## **Statutes**

California Code of Civil Procedure § 493.010 ......................................................................................... 4

California Labor Code § 2698 ................................................................................................................... 8

California Labor Code § 558.1 ........................................................................................... 14, 15, 16, 21

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................................... 11, 19

Fed. R. Civ. P. 23(a) ..................................................................................................................... 20, 22

Fed. R. Civ. P. 23(a)(1) ......................................................................................................................... 20

Fed. R. Civ. P. 23(a)(2) ................................................................................................................... 20, 21

Fed. R. Civ. P. 23(a)(3) ......................................................................................................................... 21

Fed. R. Civ. P. 23(a)(4) ......................................................................................................................... 22

Fed. R. Civ. P. 23(b) ............................................................................................................................. 20

Fed. R. Civ. P. 23(b)(1), (2) or (3) ........................................................................................................ 22

Fed. R. Civ. P. 23(b)(3) .................................................................................................................... 22, 23

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................................. 20, 23

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................................... 10

Fed. R. Civ. P. 23(e)(1)(B)(ii) .............................................................................................................. 20

Fed. R. Civ. P. 23(e) ........................................................................................................... 10

Fed. R. Civ. P. 23(e)(1), 2018 ........................................................................................ 11, 23

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................. 11

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................ 12, 13

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3) ................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................. 17

Fed. R. Civ. P. Rule 23(a) and Rule 23(b)(3) ..................................................................... 11

Fed. R. Civ. P. 23(e)(2); and (ii) .................................................................... 10, 11, 12, 17

Fed. R. Civ. P. 23(e)(3) ....................................................................................................... 13

## **Other Authorities**

Newberg on Class Actions § 13:10 ...................................................................................... 11

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      In November 2016, Defendant Direct Flow Medical, Inc. ("DFM"), a medical device company

4 headquartered in Santa Rosa, California, shut down its operations and terminated virtually its entire

5 workforce.  In his complaint in this action, Plaintiff J. Jason Reynolds alleges that, in doing so, DFM

6 (a) failed to provide its former employees with 60 days' notice of the termination, (b) failed to

7 reimburse the terminated employees for work-related expenses they had previously incurred, (c) failed

8 to compensate them for paid time off ("PTO") they had accrued but not used at the time of their

9 termination, and (d) failed to compensate them for promised pay increases that had been deferred.

10     Plaintiff began working full time for DFM at its Santa Rosa headquarters in January 2015 as a

11 Senior Director in DFM's Office of Medical Affairs.  (Notice of Motion and Motion for Class

12 Certification, ECF No. 64 ("Class Cert. Mot.") at 3.)  He was among those who were terminated in

13 November 2016.  He filed suit in January 2017 on behalf of himself and all other terminated DFM

14 employees who worked at one or both or DFM's facilities in California.  Plaintiff named as Defendants

15 the following individuals in addition to the corporate defendant DFM:  Dan Lemaitre, DFM's President

16 and CEO; Gordon Bishop, DFM's co-founder and CTO; John David Boyle, DFM's CFO; Paul

17 LaViolette, DFM's Chairman of the Board; and Yuval Binur, member of DFM's Board of Directors

18 (collectively, "Individual Defendants").  At or around the same time Plaintiff filed his complaint, DFM,

19 which was teetering on the verge of bankruptcy, assigned all of its assets to a new entity for the purpose

20 of distributing these assets to DFM's secured and unsecured creditors.

21     Following written discovery, document productions, depositions, an all-day mediation, a class

22 certification motion, and further mediated settlement negotiations, Plaintiff reached a $911,500

23 settlement that will compensate terminated DFM employees for a substantial portion of their unpaid

24 wages, PTO, and unreimbursed business expenses.  Given DFM's insolvency and subsequent

25 assignment for benefit of creditors and the developing (and still uncertain) state of the law regarding the

26 liability of individual defendants under California law for wages and/or federal or state "WARN"

27 backpay, Plaintiff believes the Settlement is an excellent result for the proposed Class.

28     Plaintiff therefore respectfully requests that the Court preliminarily approve the Settlement,

1

1   certify the Class for settlement purposes, direct notice to the Class, appoint Class Counsel under Rule

2   23(g), and set a schedule for final settlement approval.

3   **II.    FACTUAL BACKGROUND**

4            DFM was founded in Santa Rosa, California in 2004 as a medical technology company focused

5   on the development and commercialization of aortic and mitral heart valve technologies.  DFM was

6   operationally shuttered in mid-November 2016, when it laid off the vast majority of its workforce,

7   including Plaintiff.  (Class Cert. Mot. at 3.)  In addition to its Santa Rosa headquarters, DFM also had a

8   technology and manufacturing facility in Lake Forest, California.  (*Id.*)  Prior to the mass layoff in

9   November 2016, DFM employed approximately 140 individuals in Santa Rosa and 64 individuals in

10  Lake Forest.  (*Id.* at 7.)

11           Named as Individual Defendants in the litigation are those officers and directors who Plaintiff

12  contends participated directly or indirectly in the decision to terminate Plaintiff and proposed Class

13  Members without notice, wages, or other compensation:

14           (i)      Defendant Lemaitre was DFM's President and CEO, as well as a member of its Board of

15                    Directors from 2015 until around January 2017 (after the operational shutdown of the

16                    company).  (Class Cert. Mot. at 4.)  He was instrumental in DFM's 2015 financial

17                    restructuring as well as its attempts to secure additional financing.  (*Id.*)

18           (ii)     Defendant Boyle was DFM's Chief Financial Officer from 2015 to January 2017 and

19                    also briefly served as a member of its Board of Directors.  (*Id.*)  He was also

20                    instrumental in DFM's 2015 financial restructuring and attempts to secure additional

21                    financing for the company.  (*Id.*)

22           (iii)    Defendant Bishop was one of the founders of DFM and most recently its Chief

23                    Technology Officer and a member of its Board of Directors from approximately 2004 to

24                    2017.  (*Id.*)

25           (iv)     Defendant LaViolette was a Director on DFM's Board of Directors from approximately

26                    2009 to 2015 and Chairman of the Board from approximately 2015 to November 2016,

27                    and owned a portion of DFM through stock option grants.  (*Id.* at 4-5.)

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

1

2

3

    (v)      Defendant Binur was a member of the Board of Directors of DFM from 2015 to 2016. Mr. Binur was instrumental in DFM's efforts to secure additional investors and financing for DFM in China.  (*Id.* at 5.)

4

### A.  DFM's Deteriorating Financial Situation

5

6

7

8

9

10

11

12

In early 2016, DFM was in increasingly pressing need of new investment capital.  (Class Cert. Mot. at 6.)  In January 2016, assisted by Mr. Binur, DFM began negotiations with a variety of potential Chinese investors ultimately including pharmaceutical company, Hong Kong Haisco Pharmaceutical Co., Ltd. ("Haisco"), with which DFM eventually negotiated a potential investment of $65 million. (*Id.*)  As DFM's cash position continued to deteriorate over the Summer of 2016 with the Haisco investment still in negotiation, DFM began deferring scheduled salary increases for certain employees. (*Id.* at 7.)  DFM also deferred payments to certain of its vendors, including its clinical testing sites. (*Id.*)

13

14

15

16

17

DFM was able to reach a substantive understanding with Haisco in August 2016, memorialized in non-binding term sheets, to provide additional financing to DFM.  (*Id.*)  Haisco, however, backed out of this deal on November 16, 2016.  (*Id.*)  The following day, Individual Defendants including Lemaitre, Boyle, Bishop, and LaViolette participated in a conference call in which the decision was made to furlough DFM employees without pay.  (*Id.*)

18

### B.  Class Members' Furlough and Termination

19

20

21

22

23

24

25

26

On November 18, 2016, without providing any prior notice or pay in lieu thereof—or any notice of their impending termination—DFM furloughed virtually all of its workforce, including Plaintiff, and directed that these employees be placed immediately on involuntary leaves of absence without pay. (Class Cert. Mot. at 8.)  Individual Defendants Lemaitre, Gordon, and Boyle conducted an "all hands" meeting at which they announced this furlough to the workforce.  (*Id.*)  At this November 18, 2016 meeting, employees, including Plaintiff, were told that although they were being furloughed due to lack of funding, they might receive compensation for their unpaid wages in the future.  They were not told at that time that they had been or would be terminated.  (*Id.*)

27

28

On or about November 30, 2016, DFM announced the termination of nearly all of its workforce, including Plaintiff.  Employees were terminated via an email sent by Defendant Lemaitre.  (Class Cert.

Mot. at 8.)  At the time of their November 30 termination, DFM employees were still owed unpaid wages—including, but not limited to, compensation for hours worked and unused PTO.  Defendant Lemaitre's November 30, 2016, email acknowledged that employees were still owed these wages but asserted, "Unfortunately, given that we are out of funds, **we cannot pay your final check and any PTO you might have accrued.**"  (emphasis in original).  (*Id.*)  Employees were subsequently paid for hours worked for the previously uncompensated three-day period of November 15-18 but have not been compensated for unused PTO or any time worked after November 18, 2016.  (*Id.*)

Additionally, many terminated employees, including Plaintiff, had incurred necessary business expenditures at the direction of Defendants during the course of their employment—including, but not limited to, travel and client entertainment expenses that the employees had paid for out of pocket—but have not yet been reimbursed by DFM for these expenses.  (Class Cert. Mot. at 9.)  At the time of his termination, Plaintiff had accrued approximately $12,656 in unused PTO and had incurred approximately $2,610.95 in approved business expenses.  (*Id.* at 3.)  DFM's employees, including Plaintiff, were also owed back wages for their salary increases that were granted but "deferred" by DFM in the Summer of 2016.  (*Id.* at 3.)  These salary increases began accruing on July 1, 2016, and were scheduled to be paid to employees on or before November 30, 2016, but were never paid.  (*Id.*)

### C.    Assignment for the Benefit of Creditors

Facing insolvency, DFM's board members and executive officers remaining after November 18—including Defendants Lemaitre, Boyle, and Bishop—decided not to pursue a public federal bankruptcy but instead initiated a "general assignment for benefit of creditors," also known as an "ABC."  (Class Cert. Mot. at 9.)  A California ABC is an essentially private, judicially-unsupervised process for liquidating insolvent debtors pursuant to specific statutory standards for commencing and conducting such proceedings set forth in California Code of Civil Procedure § 493.010.  On or around February 7, 2017, proposed Class Members, including Plaintiff, were notified of the ABC proceeding by mail.  (*Id.* at 10.)  They were also notified of a July 7, 2017 deadline to submit any claim against the liquidated assets of DFM.  (*Id.*)  Plaintiff, along with other Class Members, submitted claims for assets from the ABC, but none of them has received any payment in response to these claims.  (*Id.*)

1    **III.    PROCEDURAL BACKGROUND**

2         Plaintiff filed this proposed class action on January 13, 2017 against DFM and Individual

3    Defendants.  (ECF No. 1.)  Defendants moved to dismiss or stay Plaintiff's complaint (ECF. No. 12)

4    but withdrew it after Plaintiff's Counsel advised them of Plaintiff's intention to file an amended

5    complaint.  (ECF No. 13.)  On March 27, 2017, Plaintiff filed an amended complaint, adding factual

6    allegations concerning the liability of the Individual Defendants and naming an additional defendant,

7    Direct Flow (Assignment for the Benefit of Creditors), LLC. (ECF No. 14.)  Defendants answered

8    Plaintiff's amended complaint on April 12, 2017.  (ECF No. 28.)

9         Plaintiff proceeded with discovery, serving document requests, interrogatories, and requests for

10   admission on the corporate and individual defendants.  (Tindall Decl., ¶ 4.)  Plaintiff's Counsel also

11   deposed Defendant Boyle.  (*Id.,* ¶ 3.)  In the course of discovery, Plaintiff learned that newly-named

12   Defendant Direct Flow (Assignment for the Benefit of Creditors), LLC was a shell company, created

13   solely for the purpose of facilitating the ABC proceeding.  (*Id.,* ¶ 4.)  Plaintiff therefore agreed to

14   stipulate to dismiss Direct Flow (Assignment for the Benefit of Creditors) as a Defendant (ECF No. 35)

15   and instead sought and obtained relevant information from this entity through a subpoena.  (*Id.*, ¶ 4.)

16        In March 2018, with discovery well underway, the parties participated in a mediation facilitated

17   by experienced employment mediator Cynthia Remmers in a session lasting approximately 12 hours.[1]

18   (Tindall Decl., ¶ 6.)  The parties made progress towards a settlement during the mediation but were

19   unable to resolve the litigation.  (*Id.*)  Settlement negotiations continued, with the assistance of Ms.

20   Remmers.  (*Id.*)  Because of progress in settlement negotiations, the parties stipulated on more than one

21   occasion to postpone other case deadlines.  (*See e.g.,* ECF Nos. 52, 54, 56, and 62.)  Plaintiff's Counsel

22   continued to prepare for class certification, serving additional discovery on Defendants and taking three

23   additional depositions.  (Tindall Decl., ¶ 3.)  Plaintiff's Counsel also obtained 19 declarations in support

24   of class certification from Class Members.  (*Id.*, ¶ 3; Class Cert. Mot. at 1.)

25        On September 21, 2018, Plaintiff filed a motion for class certification.  (ECF Nos. 64, 65.)

26   Following the submission of Plaintiff's motion and before Defendants' deadline to oppose, the parties

27   _____

28
     [1] Ms. Remmers C.V. and list of presentations is attached as Exhibit C to the Tindall Declaration.

reached the settlement that they now present to the Court for approval.

**IV.    TERMS OF THE PROPOSED SETTLEMENT**

    **A.    Proposed Class**

       The Settlement defines a proposed Class composed of "all of Defendants' employees (other than any named individual Defendants) who worked at one or both of Defendants' facilities in California who were terminated from employment on or around November 30, 2016, as part of a mass layoff or plant closing." (Tindall Decl., Exh. A ("Settlement"), ¶ 1(b).)  The Settlement Class definition differs slightly from the definition in Plaintiff's operative complaint in order to clarify that named Individual Defendants themselves are not Settlement Class Members. (*See* 1st Am. Compl., ¶ 40 (ECF No. 14).)  Additionally, "Defendants" no longer includes dismissed defendant Direct Flow (Assignment for the Benefit of Creditors), LLC.

    **B.    Benefits to the Settlement Class**

       Under the proposed Settlement, Class Members will receive a portion of the Net Settlement Fund (that is, the gross settlement of $911,500.00, less any incentive award for the class representative and attorneys' fees and costs, as approved by the Court) based on four factors: (1) the Class Member's annualized compensation at DFM as of November 30, 2016; (2) the amount of PTO the Class Member had accrued but not used as of November 30, 2016; (3) the amount of unreimbursed work expenses the Class Member had incurred as of November 30, 2016; and (4) the amount of compensation the Class Member would have earned as of November 30, 2016 because of approved but deferred pay increases but did not receive. (Settlement, ¶ 11.)[2]

    **C.    Calculation of Benefits**

       Individual settlement awards to Class Members will be calculated by the Settlement Administrator. (Settlement, ¶ 12.)  After receiving and reviewing the bids of five proposed settlement administrators, the parties agreed to jointly propose experienced settlement administrator CPT Group ("CPT") as the Settlement Administrator.  Tindall Decl., ¶ 9 and Exhibit D (C.V. of CPT Group).

---

[2] Payments to the Class will be characterized as 33 1/3% wages; 33 1/3% interest, and 33 1/3% penalties. *Id.* Appropriate tax withholdings shall be calculated based only on the 33 1/3% of payments designated as wages. *Id.*

Defendants will provide the Settlement Administrator each Class Member's annualized compensation at DFM as of November 30, 2016; the amount of PTO each Class Member had accrued but not used as of November 30, 2016; the amount of unreimbursed work expenses each Class Member had incurred as of November 30, 2016; and the amount of compensation each Class Members would have earned as of November 30, 2016 because of approved but deferred pay increases but did not receive. (Settlement, ¶ 12.)

To calculate individual settlement awards, the Settlement Administrator will perform two calculations. (Settlement, ¶ 13.) First, the Settlement Administrator will divide the individual Settlement Class Member's annualized compensation by the total annualized compensation of all Class Members, resulting the Settlement Class Member's "Annualized Compensation Ratio." (*Id.*) The Settlement Administrator will then multiply the Settlement Class Member's Annualized Compensation Ratio by the figure representing 20% of the Net Settlement Amount. (*Id.*) The result of this calculation is referred to as *Portion 1* of the Settlement Class Member's Settlement Payment. (*Id.*)

Second, the Settlement Administrator will add the following three amounts for each Class Member: (a) the dollar value of the individual Class Member's paid time off (or PTO) that the Class Member had accrued but not used as of November 30, 2016, (b) the amount of unreimbursed work expenses the Class Member had incurred as of November 30, 2016, and (c) the amount of compensation the Class Member would have earned as of November 30, 2016 because of approved but deferred pay increases but did not receive. (Settlement, ¶ 14.) The Settlement Administrator will then divide that figure into the sum of these three figures of all Class Members, resulting in the Settlement Class Member's "Unpaid Compensation & Expenses Ratio." (*Id.*) The Settlement Administrator will then multiply the Settlement Class Member's Unpaid Compensation & Expenses Ratio by the figure representing 80% of the Net Settlement Amount. The result of this calculation will

be *Portion 2* of the Settlement Class Member's Settlement Payment.[3]

Each Class Member's Settlement Payment shall be the sum of the Class Member's Portion 1 and Portion 2 amounts. (Settlement, ¶ 15.)

### D.    PAGA Penalties

Plaintiff's complaint alleges claims for penalties under the Private Attorneys General Act of 2004 ("PAGA"), Labor Code § 2698 *et seq.*  The parties agreed to allocate 1.5% of the Settlement Amount, or $13,672, for PAGA penalties, subject to Court approval.  Pursuant to PAGA, 75% of this amount (or $10,254) shall be paid to the LWDA, and the remaining 25% (or $3,418) shall be distributed to the Settlement Class Members as part of the Net Settlement Fund.

### E.    Notice Plan

Within 30 days of the date of a preliminary approval order, the Settlement Administrator will mail all Class Members a Notice[4] notifying each Class Member of his or her annualized compensation, amount of paid time off the Class Member had accrued but not used, amount of unreimbursed work expenses, and amount of approved but deferred pay increases (all as of November 30, 2016). (Settlement, ¶ 30.)  Class Members will have the opportunity to dispute these amounts.  (*Id.*)  The Settlement Administrator will also email the Court-approved Notice to all Class Members for whom it has email addresses and provide an estimate of the settlement payment the Class Member would receive if the Settlement receives final approval, and will also establish a website with all relevant settlement documents and Court orders.  (*Id.*, ¶¶ 31-32.)

### F.    Dispute, Objection, and Opt-Out Procedures

Class Members will have 60 days from the mailing date of the Notice to:  (1) dispute the components of the individual settlement award, (2) opt out of the Settlement, or (3) object to the terms of the Settlement or to Class Counsel's Fees/Costs or to Plaintiff's Enhancement Award.  (Settlement,

---

[3] Note:  if the Class Member had no unpaid PTO, no unreimbursed expenses, and no deferred raise, then that Class Member's Portion 2 will be zero.  All Class Members, however, will receive a settlement payment because all Class Members will have an amount for Portion 1, which is calculated based on the Class Member's annualized compensation.

[4] The Notice agreed upon by the Parties is attached as Exhibit B to the Tindall Declaration.

8

¶ 35.)  If a Class Member wishes to dispute the figures outlined above, the Class Member may postmark a written, signed dispute along with any supporting documents to the Settlement Administrator at the address included in the Notice.  (*Id.*, ¶ 36.)  The Settlement Administrator will resolve any such disputes by reviewing any records the Class Member provides as well as Defendants' records.  (*Id.*, ¶ 37.)  The Settlement Administrator will be granted reasonable access to Defendants' records to assist it in this process.  (*Id.*)

Any Class Member may elect to opt out of the Settlement by submitting a written Request for Exclusion from the Settlement to the Settlement Administrator that is signed and completed in the manner required by the Class Notice.  (Settlement, ¶ 38.)  Similarly, any Class Member wishing to object to the Court's approval of this Settlement may mail or file such written objections and written documents submitted in support thereof with the Court no later than 60 days from the initial mailing date of the Notice.  (Settlement, ¶ 40.)  The Notice informs objectors that they may appear at the Final Approval Hearing either in person or through counsel.  (*Id., see* Exh. B at 6.)

## G.    Release of Claims

Plaintiff and Settlement Class Members shall fully release and discharge the Defendants, and all present and former parent companies, subsidiaries, divisions, related or affiliated companies, owners, shareholders, officers, directors, employees, agents, attorneys, insurers, successors and assigns, and any individual or entity which could be jointly liable with Defendants, or any of them, and their counsel of record, from all claims that were asserted in the operative complaint (the First Amended Complaint) or that could have been asserted based upon the factual allegations set forth in the operative complaint.  (Settlement, ¶ 49.).

## H.    Funding of Settlement and Payments

Defendants have agreed to pay a Gross Settlement Amount of $911,500.00 in addition to the costs of settlement administration, which CPT Group has stated will be no more than $12,000. (Settlement, ¶ 1(m); Tindall Decl., ¶ 9.)  The total amount Defendants are paying to resolve this matter, therefore, is $923,500.  This amount will be transferred to the Settlement Administrator within 10 business days of the Effective Date of the Settlement.  (Settlement, ¶ 7.)  Under the Settlement, Plaintiff's Counsel may seek reasonable litigation costs, currently estimated to be approximately

$21,681, and attorneys' fees (not to exceed 25% of the sum of the Gross Settlement Amount and the estimated settlement administration costs, or a total of $230,875),[5] and seek a Class Representative Enhancement not to exceed $12,500. ( Settlement, ¶ 1(m).)  The remainder of the Settlement Amount (the "Net Settlement Fund") will be apportioned among Settlement Class Members as described above. Class Members will *not* need to submit a claim to receive their settlement payment.

Class Members will be paid in the form of checks that will remain negotiable for a period of 90 calendar days from when they are issued.  (Settlement, ¶ 16.)  These checks will be mailed within 30 days of the Effective Date of the Settlement.  (*Id.*, ¶ 8.)  The Settlement Administrator will send a reminder email and/or post card to those Class Members whose checks remain uncashed thirty days before the end of the 90-day period.  (*Id.*, ¶ 16.)  Settlement payments not negotiated within the 90-day period shall be distributed to participating Settlement Class Members on a pro rata basis if the amount of uncashed settlement checks is less than 90% of the Net Settlement Fund; if the unnegotiated settlement payments equal or exceed 90% of the Net Settlement Fund, the remainder sum will be put in a cy pres fund and distributed subject to Court approval.  (*Id.*)  If this occurs, the Parties will agree upon a cy pres recipient and request Court approval for it.

## V.   **ARGUMENT**

### A.   **The Court Should Direct Notice to the Settlement Class**

Under the recently revised Rule 23(e) of the Federal Rules of Civil Procedure, "The court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

Below, Plaintiff details why this motion should be granted and why notice should be sent to the Settlement Class.  In short, if approved, the Settlement will provide valuable benefits to the Class, making the settlement fair, reasonable, and adequate, and thus worthy of the Court's approval—

---

[5] 25% of $923,500 = $230,875.

especially in light of the risks of non-recovery.  Moreover, certification of the Class for settlement purposes is appropriate under both FRCP Rule 23(a) and Rule 23(b)(3).

### 1.    The Proposed Settlement Merits Approval

"The decision to give notice of a proposed settlement to the class is an important event.  It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object."  Fed. R. Civ. P. 23(e)(1), 2018 Advisory Committee's Notes.  A careful review at this stage of the proceedings is important, as the next step will be the costly and time-consuming process of disseminating class notice.  *See* Newberg on Class Actions § 13:10 (5th ed.).  The revised Rule 23 provides a checklist of factors to consider when assessing—at the final approval stage—whether a proposed settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2)(B).  Previously, the Ninth Circuit and other courts had developed their own lists of factors to be considered; the revised Rule 23 "directs the parties to present [their] settlement . . . in terms of [this new,] shorter list of core concerns."  Fed. R. Civ. P. 23(e)(2), Advisory Committee's Notes.

Below, Plaintiffs analyze each of the Rule 23(e)(2) factors in turn, and do so bearing in mind the Ninth Circuit's recent admonition that the key "underlying question remains this:  Is the settlement fair?"  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018); *accord* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee's Notes ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate.").  As discussed below, the settlement is fair, and the Rule 23(e)(2) factors weigh in favor of approving it.

### B.    The Class Representative and Class Counsel Have Adequately Represented the Class

Under Rule 23(e)(2)(A), the first factor to be considered is the adequacy of representation by the class representatives and attorneys for the class.  This analysis includes "the nature and amount of discovery" undertaken in the litigation.  Fed. R. Civ. P. 23(e)(2)(A), Advisory Committee's Notes.  Here, J. Jason Reynolds, the proposed class representative, has diligently represented the Class.  He actively participated in the case over two years, including assisting counsel when they were drafting the complaint and amended complaint, attempting to contact potential class members to obtain declarations

---

11

1    in support of class certification, and attending a 12-hour mediation session.  (Tindall Decl., ¶ 10;

2    Douglas Decl., ¶ 7.)  Throughout the case, Mr. Reynolds has remained in contact with counsel, stayed

3    apprised of the litigation, and has made decisions with the best interests of the Class in mind.  (*Id.*)

4        Plaintiffs' Counsel have also adequately represented the Class.  They have vigorously

5    prosecuted this case, serving extensive discovery, conducting four depositions, interviewing dozens of

6    proposed class members, and briefing class certification.  (Tindall Decl., ¶ 3.) These efforts have led

7    counsel to advance over $21,000 in litigation expenses on behalf of the class, with no assurance that

8    those expenses would be reimbursed. (*Id.*, ¶¶ 24-25.)  Proposed class counsel also have a combined four

9    decades of experience litigating employment class actions—having successfully litigated many prior

10   wage and hour class cases—and have brought that experience and knowledge to bear on behalf of the

11   proposed Class.  (*Id.*, ¶ 12; Douglas Decl., ¶ 6.)

12       **C.    The proposed settlement was negotiated at arm's length**

13       The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was

14   negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this can be

15   "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations

16   leading up to the proposed settlement."

17       There are multiple indications here of the arm's-length nature of the negotiations.  See, e.g.,

18   *Kulesa v. PC Cleaner, Inc.,* No. 12-cv-0725, 2014 WL 12581770, at *8 (C.D. Cal. Aug. 26, 2014)

19   (considering Bluetooth and finding no indicia of collusion since class members received substantial

20   monetary relief; *the* requested fees were clearly disclosed in the notice; and settlement negotiations

21   were overseen by a mediator).  The Settlement here is the result of arm's-length negotiations involving

22   experienced employment class action attorneys who are well-versed in the applicable substantive law,

23   class action litigation procedures, and the legal and factual issues of this particular case. (See Tindall

24   Decl., ¶¶ 4, 12-17.)  The negotiations that led to the Settlement were conducted with the aid of

25   experienced class action mediator Cynthia Remmers[6] over the course of a 12-hour mediation as well as

26

27   _____

28   [6] *See* Tindall Decl., Exh. C (Remmers C.V. and list of presentations).

1  extensive subsequent negotiations by telephone.  (Id. ¶ 6.)  "[T]he involvement of a neutral or court-

2  affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted

3  in a manner that would protect and further the class interests."  Rule 23(e)(2)(B), Advisory

4  Committee's Notes; accord *G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at

5  *13 (N.D. Cal. July 30, 2015) (the use of an experienced neutral mediator also "confirms that the

6  settlement is non-collusive").

7          While a class has not yet been certified, Plaintiff completed his preparation for class

8  certification, including by filing a motion for class certification.  (ECF No. 64.)  The Settlement was

9  reached after extensive discovery, including deposing four Defendants and obtaining declarations from

10  19 proposed Class Members.  (Tindall Decl., ¶¶ 3-4.) Plaintiff's Counsel also conducted dozens of

11  interviews with proposed Class Members.  (*Id.*)

12          **D.     The substantial class relief weighs in favor of approval**

13          The third factor to be considered is whether "the relief provided for the class is  adequate, taking

14  in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

15  method of distributing relief to the class, including the method of processing class-member claims; (iii)

16  the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

17  agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  Under this

18  factor, the relief "to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), Advisory

19  Committee's Notes; *In re Volkswagen*, 895 F.3d at 611 (the "factors and warning signs" identified in

20  *Bluetooth* "are just guideposts"; the focus is fairness).

21          **1.  The settlement provides substantial relief for the class**

22          The relief to be provided to the settlement class is substantial in light of the financial

23  circumstances of the primary defendant, DFM.  As discussed above, the settlement will compensate

24  Settlement Class Members based on four factors: (1) their annualized compensation at DFM as of

25  November 30, 2016; (2) the amount of paid time off (or PTO) they had accrued but not used as of

26  November 30, 2016; (3) the amount of unreimbursed work expenses they had incurred as of November

27  30, 2016; and (4) the amount of compensation they would have earned as of November 30, 2016

28  because of approved but deferred pay increases but did not receive.  (Settlement, ¶ 11.)

Plaintiff's Counsel estimate that this Settlement will compensate Class Members in the aggregate for nearly 70% of the PTO, unreimbursed expenses, and retroactive pay increases that they are owed. (Tindall Decl., ¶ 8.) Given the insolvency of the corporate defendant, the risks of demonstrating liability against the Individual Defendants, and the risks of protracted litigation as further discussed below, this Settlement provides substantial benefits to the Class.

### 2. Continued litigation through trial and appeals would have entailed substantial costs, risks, and several years of delay

Almost all class actions involve high levels of cost, risk, and duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Here, had the parties not settled, the litigation would likely have been risky, protracted, and costly. "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, No. CV-09-00261-SBA, 2012 WL 5878390 (N.D. Cal. Nov. 20 2012), at *6 (internal quotations and citations omitted).

Plaintiff believes that he would have been able to demonstrate that this action is appropriate for class treatment. All Class Members were furloughed and terminated on the same dates—without notice and without all wages and other compensation owed. Plaintiff also believes that he could demonstrate the liability of Defendant DFM for these actions. DFM, however, is financially insolvent and effectively no longer exists as a corporate entity.

Less certain is whether the Individual Defendants' actions—and inactions—subject them to liability under the federal WARN Act or the California Labor Code (including the California WARN Act). Labor Code § 558.1 imposes liability on "[a]ny employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802" of the California Labor Code, though not for WARN Act violations. Plaintiff contends that Individual Defendants fall under § 558.1. Throughout this

litigation, however, Individual Defendants have maintained that Plaintiff's interpretation incorrect and that their allegedly minimal involvement in any asserted violation of the Labor Code does not expose them to liability under § 558.1. (Tindall Decl., ¶ 5.)  The case law on § 558.1 is still evolving.  Even if Plaintiff had prevailed at trial, the issue of § 558.1 could have led to a protracted and costly appeal, potentially taking another two-plus years to resolve.  Plaintiff's allegations about the liability of Individual Defendants under the federal and California WARN Acts through alter ego or ownership, control, and operation of DFM present yet more challenges.

It is possible that at trial, Plaintiff could recover 100% of PTO, unreimbursed expenses, and retroactive pay increases for himself and Class Members, plus additional WARN Act penalties, waiting time penalties, and prejudgment interest against all Defendants.  Total recovery by Plaintiff on behalf of himself and Class Members would then amount to approximately $7,255,500, based on Plaintiff's Counsel's calculations.  (Tindall Decl., ¶ 7.)  But such a trial victory against all Defendants on all claims is unlikely.  The liability against Individual Defendants under Labor Code § 558.1 is uncertain and under the WARN Act is even more uncertain.  The Court could deny Plaintiff's motion for class certification, or Plaintiff could fail to demonstrate one or more of these claims on the merits.  Moreover, Plaintiff could be awarded a substantial judgment against DFM only but be unable to recover it because of DFM's insolvency.

The current Settlement, which provides for a gross settlement payment of $911,500, compensates Class Members for a substantial portion of their damages now, and it is an excellent result for Class Members given the insolvency of the corporate defendant and the uncertain liability of Individual Defendants.

### 3.  The Settlement provides for an effective distribution of proceeds to the Class

The Settlement contemplates an efficient and effective distribution process.  Defendants will provide the Settlement Administrator with the Settlement Class Members' annualized compensation at DFM as of November 30, 2016; the amount of PTO Class Members had accrued but not used as of November 30, 2016; the amount of unreimbursed work expenses; and the amount of compensation Class Members would have earned as of November 30, 2016 because of approved but deferred pay increases but did not receive. (Settlement, ¶ 12.)  The Settlement Administrator will then calculate

1    individual settlement awards in accordance with the figures discussed above and notify Class Members

2    of these amounts within 30 days of the date of preliminary approval.  (Settlement, ¶¶ 12, 30.)

3        Class Members will have the opportunity to dispute their calculated settlement award by mailing

4    a written, signed dispute along with any supporting documents to the Settlement Administrator within

5    60 days.  (Settlement, ¶ 35-36.)

6        Basing Class Members' Settlement payments on these factors is fair and reasonable because

7    these factors are what would have made up Plaintiff's demonstration of class-wide damages at trial.

8

9    **4.  The requested award of attorney's fees and costs, including timing of payment, also support settlement approval**

10        Throughout the course of this litigation, Plaintiff's Counsel was required to undertake

11   significant legal work on behalf of the Class, including drafting the complaint and amended complaint,

12   propounding discovery requests and reviewing documents, taking multiple depositions, conducting

13   extensive research and briefing relating to the novel issues posed by the assignment for the benefit of

14   creditors proceeding, researching Individual Defendants' liability under Cal. Labor Code § 558.1.

15   (Tindall Decl., ¶ 3.; Douglas Decl., ¶¶ 8-11.)  Plaintiff's Counsel also participated in lengthy settlement

16   negotiations, including an all-day mediation, and responded to inquiries from an unusually high number

17   of proposed Class Members.  (Tindall Decl., ¶¶ 4, 6.)  Plaintiff's Counsel also prepared and filed a

18   motion for class certification.

19        The amount of fees and costs to be requested by Plaintiff's Counsel—an award of reasonable

20   litigation costs and an award of attorneys' fees in an amount up to 25% of the Gross Settlement Amount

21   plus the estimated amount of the Settlement Administration—is in keeping with the Ninth Circuit's

22   benchmark of attorneys' fees and represents significantly less than their fees would be if calculated by a

23   lodestar method.  (Tindall Decl., ¶¶ 20, 21.)  Plaintiff's Counsel is *not* seeking a multiplier on their

24   lodestar amount—or even the full value of their lodestar—so that greater relief can be provided to the

25   Settlement Class.  Had the fee amount been litigated rather than negotiated, a multiplier could have

26   been awarded and the fees substantially higher.  *Sadowska v. Volkswagen Grp. of Am.*, No. CV 11-

27   00665, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) (approving negotiated fee award 1.37 times

28   the lodestar and noting that "[m]ultipliers can range from 2 to 4 or even higher.")

The amount that Plaintiff's Counsel will request for fees and costs is well within the range of reasonable and customary wage-and-hour settlements as well as class action settlements in general.[7] The proposed Settlement contemplates that Plaintiff will file a motion for an award of such attorneys' fees and costs prior to or contemporaneous with the final approval hearing.  (Settlement, ¶ 48.)  At that time, Plaintiff's Counsel will present further detail of the time and costs they have spent on this litigation.

Plaintiff's Counsel have also incurred out-of-pocket costs in the current amount of $21,681.15. Tindall Decl., ¶¶ 24-25.  These costs include filing fees, costs for four depositions, mediation costs, delivery and service charges, and computer research.  Given that this is a class and representative action, the costs incurred are reasonable.

### 5.  The parties have no other agreements pertaining to the Settlement

The Court also must evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  Here, the settlement agreement before the Court is the only agreement between Defendants and Plaintiff. (Tindall Decl., ¶ 11.)

### E.    The Settlement treats all Settlement Class Members equitably

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

The proposed relief in the Settlement appropriately and fairly balances Class Members' interests.  In wage-and-hour class cases, it is common to allocate funds based on the time worked by

---

[7] *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989) (establishing 25% of the fund as the "benchmark" award that should be given in common fund cases, subject to adjustments when appropriate); *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (awarding 25% benchmark); *In re Pacific Enterprises Sec. Litig.* (9th Cir. 1995) 47 F.3d 373, 379 (affirming 33% fee award); *In re Activision* (N.D. Cal. 1989) 723 F. Supp. 1373, 1375, 1379 (32.8% award); *see also In re Liquid Carbon Dioxide Cases* (San Diego Sup. Ct. 1996) J.C.C.P. 3012 (33⅓% fee plus costs); *Bright v. Kanzaki* (San Francisco Sup. Ct., 1997) No. 964899 (33⅓% fee plus costs).

1   class members. *See, e.g., Cicero v. DirecTV, Inc.*, 2010 WL 2991486 (C.D. Cal. July 27, 2010), at *5

2   ("the fund will be distributed based on the number of weeks worked by each class member, which

3   appears to be a fair method of distributing the fund"); *Pierce v. Rosetta Stone, Ltd.*, No. 11-01283 SBA,

4   2013 WL 1878918, at *6-7 (N.D. Cal. May 3, 2013). In this case, the parties propose a variation on

5   such an allocation that will fairly compensate all Class Members. Class Members here earned varying

6   salaries, and so are owed varying penalty payments for Defendants' failure to provide WARN Act

7   Notice. Similarly, Class Members had accrued different amounts of unused PTO at the time of their

8   termination and some Class Members were owed different deferred pay increases. Finally, some Class

9   Members were not reimbursed for thousands of dollars of necessary business expenditures upon their

10   termination, while other Class Members were owed no unreimbursed expenses.

11   It would be unfair to compensate Class Members based only on their annualized compensation

12   in this case—especially given the large amount of unreimbursed expenses and unpaid PTO that some

13   Class Members are owed. It would be similarly unfair to compensate only those Class Members with

14   unreimbursed expenses, omitting those Class Members without unreimbursed expenses who are still

15   owed other payments from Defendants. *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939,

16   2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the

17   settlement "compensates class members in a manner generally proportionate to the harm they suffered

18   on account of [the] alleged misconduct"). The Settlement strikes a reasonable and adequate balance to

19   serve the interests of all Class Members.

20   Finally, Plaintiff's Counsel seeks a class representative service payment in the amount of

21   $12,500. This payment is intended to be in recognition for the services he performed on behalf of the

22   Class. The award is merited given the Plaintiff's extensive participation in and commitment to the

23   litigation. (Tindall Decl., ¶ 10; Douglas Decl., ¶ 7.) Among other efforts, Plaintiff reviewed the

24   complaint and amended complaint, attended a 12-hour mediation, and conferred with counsel regularly

25   throughout the litigation; Plaintiff also assisted Plaintiff's Counsel in communicating with proposed

26   Class Members concerning their experiences with DFM. (*Id.*) Assuming the Court grants preliminary

27   approval, Plaintiff's Counsel will include in the motion for final approval information regarding the

28

1    amount of time Plaintiff spent on each aspect of the litigation in support of the request for the Class

2    Representative service payment.

3    **F.    The Proposed PAGA Payment is Appropriate**

4    In reviewing a class action settlement that also encompasses claims under the Private Attorneys

5    General Act ("PAGA"), the trial court should "evaluate the adequacy of compensation to the *class as*

6    *well a*s the adequacy of the settlement in view of the purposes and policies of PAGA." *See O'Connor*

7    *v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016) (emphasis in original), 1134.  In

8    performing this analysis, the Court may apply a sliding scale.  For example, if the settlement for the

9    Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled.  By providing fair

10   compensation to the class members as employees and substantial monetary relief, a settlement not only

11   vindicates the rights of the class members as employees but may also have a deterrent effect upon the

12   defendant employer and other employers, an objective of PAGA.  *Id.*

13   Here, the Settlement and the proposed $13,672 PAGA payment, 75% of which (or $10,254) will

14   be distributed to the LWDA, fulfills the purposes of PAGA.  (*See* Settlement, ¶ 25.)  Because the core

15   of this case is Plaintiff's claims for unpaid wages, unreimbursed expenses, and unpaid PTO, the

16   proposed Settlement distribution ensures that the majority of the Settlement funds will be allocated to

17   Class Members who are owed these amounts.  This is fully consistent with the purposes of PAGA,

18   which include "encouraging compliance with Labor Code provisions" and "further[ing] the state's

19   policy to protect workers from substandard and unlawful conditions."  *O'Connor*, 201 F. Supp. 3d at

20   1132-33 (citing brief submitted by the LWDA).  Plaintiff also considered the range of payments to the

21   LWDA in similar cases in determining how much to allocate to the LWDA here.  The proposed PAGA

22   payment of 1.5% of the fund—or $13,672 out of a $911,500 Settlement—is well within the range of

23   payments to the LWDA that have been approved in other cases.[8]

24   ――――――――――――――――――――――

25   [8] *See, e.g., Chu v. Wells Fargo Invs. LLC* Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645,

26   (N.D. Cal. Feb. 16, 2011), at *1, *6 (approving $7,500 payment to LWDA out of $6.9 million common
     fund settlement, or 0.1%); *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-01821-AWI-EPG, 2016

27   WL 3077710 (E.D. Cal. May 31, 2016) (approving $3,000 payment to LWDA out of $150,000 total

28

1    For all these reasons, the proposed settlement merits approval.

2

3    **VI.    CERTIFICATION OF THE CLASS WILL BE APPROPRIATE FOR SETTLEMENT**
     **PURPOSES**

4         The second prerequisite for directing notice of the settlement to the class is a determination that

5    the settlement class is likely to meet the requirements for certification.  Fed. R. Civ. P. 23(e)(1)(B)(ii).

6    Certification requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) be

7    satisfied.  In addition, the Court must assure itself that the proposed form of class notice is the "best

8    notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

9         **A.    The settlement class satisfies the requirements of Rule 23(a)**

10             **1.    The class members are too numerous to be joined**

11        The first Rule 23(a) requirement is that the proposed class be so numerous that joinder of all

12   members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  Although there is no exact numerical cutoff,

13   "[g]enerally speaking, courts will find that the 'numerosity' requirement has been satisfied when the

14   class comprises 40 or more members, and will find that it has not been satisfied when the class

15   comprises 21 or fewer."  *Ansari v. New York Univ.*, 179 FRD 112, 114 (S.D. N.Y. 1998).  Here, the

16   numerosity requirement is easily satisfied.  DFM terminated over 200 proposed Class Members on

17   November 30, 2016.  Their names and last-known-addresses are available through DFM's employment

18   records, so class notice can be provided efficiently.  The proposed Class is sufficiently numerous that

19   joinder of each individual Class Member would be impracticable.

20             **2.    The action involves common questions of law or fact**

21        Under Rule 23(a)(2), there must be "questions of law or fact common to the class," meaning the

22   class's claims "must depend upon a common contention" such that "determination of [their] truth or

23   falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal–*

24

25   _____

26   settlement (or 2%)); *McKenzie v. Federal Express Corp.*, No. CV 10-02420-GAF, 2012 WL 2930201
     (C.D. Cal. Jul. 2, 2012) (approving $61,875 payment to LWDA out of total settlement of $8.25 million,
27   or 0.75%); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 (E.D.
     Cal. June 11, 2012) (approving $7,500 payment to LWDA out of $518,245 settlement amount, or
28   1.4%).

1    *Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011).  Under the "permissive" and "flexible" standard for

2    commonality under Rule 23(a)(2), either "shared legal issues with divergent factual predicates" or "a

3    common core of salient facts coupled with disparate legal remedies" suffices.  *Parra v. Bashas' Inc.*,

4    536 F.3d 975, 978 (9th Cir. 2008); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998);

5    *Lane v. Wells Fargo Bank, N.A.*, No. 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013)

6    (citing *Parra*).  Commonality does not require complete congruence or that all questions of fact and law

7    be common.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

8            The facts in the record demonstrate that proposed Class Members were terminated on a single

9    day—November 30, 2016—and were terminated in the same way—through a mass email from

10   Defendant Lemaitre.  (Class Cert. Mot. at 8.)  Moreover, there is no evidence that 60 days' notice (or

11   any notice, for that matter) was provided to the proposed Class Members.  As such, the key factual

12   scenario—the layoff and the lack of advance notice provided—is common to the proposed Class.

13           While the amounts that Class Members may be owed by Defendants may vary, their entitlement

14   to such damages is subject to proof by class-wide evidence, such as DFM's payroll records.  Legal

15   questions such as DFM's violation of the WARN Act and Individual Defendants' liability under Cal.

16   Labor Code § 558.1 as "other person[s] acting on behalf of an employer" who violated certain provision

17   of the California Labor Code or any order of California's Industrial Welfare Commission are common

18   to the Class and well suited for a class-wide proceeding.

19           **3.    Plaintiff's claims are typical of those of the class**

20           Under Rule 23(a)(3)'s "permissive standards," a plaintiff's claims are considered typical "if

21   they are reasonably coextensive with those of absent class members; they need not be substantially

22   identical."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).  "The test of typicality is whether

23   other members have the same or similar injury, whether the action is based on conduct which is not

24   unique to the named plaintiffs, and whether other class members have been injured by the same course

25   of conduct."  *Id.* (internal quotation marks omitted).

26           Here, Plaintiff Reynolds—like all proposed Class Members—suffered the same injury, based on

27   the same set of facts, as the rest of the Class:  he was terminated on November 30, 2016 without prior

28   notice.  In addition, like proposed Class Members, he was not paid the PTO that he had accrued, he was

21

1  not paid his promised retroactive salary increase, and he was not reimbursed for work-related expenses

2  that he had incurred.  He is thus a member of, and alleges the same injuries as, the proposed Class.  His

3  claim is based on conduct by Defendants that is not unique to him but also applies equally to all other

4  Class Members, and his underlying claims rely on the same legal or remedial theory as the claim of all

5  proposed Class Members.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011), 984; *Wolin v.*

6  *Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010).

7       **4.      Plaintiff and his counsel have and will continue to fairly and adequately**

8            **protect the interests of the Class**

9       The final Rule 23(a) requirement demands that "the representative parties will fairly and

10  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is met as long

11  as the named plaintiffs and their counsel (1) have no conflicts of interest with other class members, and

12  (2) will prosecute the action vigorously.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

13  1998). As discussed above in the context of settlement approval, there has been adequate representation

14  of the proposed Class throughout this litigation.  There are no intra-class conflicts; to the contrary,

15  Plaintiff and Class Members share the same interest in seeking compensation from Defendants for

16  unpaid wages, PTO, and expenses.  Plaintiff has demonstrated his commitment to furthering the Class's

17  interests, and Plaintiff's counsel are experienced attorneys with a history of successfully litigation

18  complex employment class actions.  (*See* Tindall Decl., ¶¶ 10, 12-17; Douglas Decl., ¶¶ 6-7.)

19       **B.      The settlement class meets the requirements of Rule 23(b)(3)**

20       "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

21  certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."

22  *Hanlon*, 150 F.3d at 1022.  Here, the settlement class is maintainable under Rule 23(b)(3), as common

23  questions predominate over any questions affecting only individual members and class resolution is

24  superior to other available methods of adjudication.  *Id.*  Class Members' claims depend primarily on

25  whether they are owed compensation for their termination on November 30, 2016, raising just the sort

26  of predominantly common questions courts have found to justify class treatment.  *See, e.g.*, *Wolin v.*

27  *Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1173 (common issues predominated in multistate

28  automotive defect litigation); *Hanlon,* 150 F.3d at 1022-1023 (common issues predominated in suit

22

1   involving auto defect); *Chamberlain v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (same).

2       Similarly, there can be little doubt that resolving all Class Members' claims through a single

3   class action (and particularly in a class-wide settlement providing relief to all Class Members) is

4   superior to a series of individual lawsuits.  "From either a judicial or litigant viewpoint, there is no

5   advantage in individual members controlling the prosecution of separate actions.  There would be less

6   litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."

7   *Hanlon*, 150 F.3d at 1023.  Finally, because class certification here arises in the settlement context,

8   there are no issues here regarding whether the case presents issues regarding trial manageability, "for

9   the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

10          **C.**     **The proposed Class Notice provides the best method of notice practicable**

11      Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all

12  class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Where the settlement

13  class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under

14  the circumstances, including individual notice to all members who can be identified through reasonable

15  effort."  Fed. R. Civ. P. 23(c)(2)(B).

16      Here, the parties agreed to provide individual notice by both U.S. mail and email, where email

17  addresses are available.  The Settlement Administrator will perform a further National Change of

18  Address search to identify the most-current mailing addresses for Class Members.  Plaintiff's Counsel

19  have been in touch with dozens of Class Members and will inform the Settlement Administrator of any

20  address changes of which they are aware.  In addition, the parties have agreed to publish a settlement

21  website.

22      Plaintiff respectfully requests that the Court approve this method of notice as the best

23  practicable under the circumstances.  *See, e.g., Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir.

24  2010) (finding mailed notice to be the best notice practicable where reasonable efforts were taken to

25  ascertain class members addresses).  The Notice complies with Rule 23(c)(2)(B) in that it "clearly and

26  concisely state[s] in plain, easily understood language" the nature of the action; the class definition; the

27  class claims, issues, or defenses; that the class member may appear through counsel; that the Court will

28

1  exclude from the class any member who requests exclusion; the time and manner for requesting

2  exclusion; and the binding effect of a class judgment on class members.

3  **VII.    THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL**

4       Once the Court directs notice of the settlement to the Class, the next steps in the settlement

5  approval process are to schedule a final approval hearing, allow time for notice to be sent to the class

6  and an opportunity for class members to submit objections and opt-out requests, and allow the parties to

7  conduct appropriate objector discovery if needed.[9]

8       The parties thus propose the following schedule:

| | |
|---|---|
| Settlement Administrator to disseminate class notice: | 30 days after entry of order |
| Plaintiffs to file a motion for settlement approval and award of attorney's fees: | 60 days after entry of order |
| Deadline for Class Members to opt out of or object to the Settlement | 60 days after mailing of Notice |
| Settlement Administrator to file affidavit attesting that notice was disseminated as ordered: | 70 days after mailing of Notice |
| Reply in support of final approval and fee application: | 110 days after entry of order |
| Final Approval hearing: | 125 days after entry of order (or date thereafter convenient to the Court) |

/ / /

/ / /

/ / /

/ / /

_____

[9] *See, e.g.,* Final Order and Judgment, *Milano v. Interstate Battery Sys. of Am., Inc.*, No. 4:10-CV-02125 (N.D. Cal. July 5, 2012) (ECF No. 106) (noting that objector repudiated his objection in deposition testimony); *In Re: MagSafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD,  2015 WL 428105, at *2 (N.D. Cal. May 29, 2012) (authorizing objector depositions).

24

**CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court enter the accompanying proposed Order directing notice of the proposed settlement to the Class, certifying the Settlement Class, appointing Class Counsel, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

DATED: January 31, 2019                    Respectfully submitted,

                                           **GIBBS LAW GROUP LLP**

                                           *By:   /s/ Steven M. Tindall*

                                           Steven M. Tindall
                                           smt@classlawgroup.com
                                           Caroline Corbitt
                                           ccc@classlawgroup.com
                                           505 14th Street, Suite 1110
                                           Oakland, CA 94612
                                           Telephone:  (510) 350-9700
                                           Facsimile:  (510) 350-9701

                                           **DOUGLAS LAW OFFICES**
                                           John H. Douglas
                                           jdouglas@douglaslegal.com
                                           100 Pine Street, Suite 1250
                                           San Francisco, CA 94111
                                           Telephone: (415) 794-4751
                                           Facsimile: (415) 795-3432

                                           *Attorneys for Plaintiff*