UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. JASON REYNOLDS,<br>Plaintiff,<br>v.<br>DIRECT FLOW MEDICAL, INC., et al.,<br>Defendants. | Case No. 17-cv-00204-KAW<br><br>**ORDER REQUIRING SUPPLEMENTAL BRIEFING ON PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**<br>Re: Dkt. No. 71 |

The Court has reviewed Plaintiff's motion for settlement approval, and hereby orders Plaintiff to provide a supplemental brief regarding the following issues. The supplemental brief shall be filed no later than February 20, 2019.

**A.  Reasonableness of the Settlement**

At the preliminary approval stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1120-21 (N.D. Cal. 2016). This determination "requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Cotter*, 176 F. Supp. at 936 (citing *In re High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-LHK, 2014 WL 3917126, at *4 (N.D. Cal. Aug. 8, 2014). Furthermore, the Ninth Circuit has recognized that where no class has been formally certified, "there is an even greater potential for a

1 breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Signs of collusion that the Court must consider include: (1) whether counsel receives a disproportionate distribution of the settlement, (2) where the parties negotiate a "clear sailing" provision for payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to the defendants. *Id.*

Here, Plaintiff asserts that in November 2016, Defendant Direct Flow Medical, Inc. shut down its operations and terminated almost its entire work force. (Plf.'s Mot. for Settlement Approval at 1, Dkt. No. 71.) Plaintiff alleges that in doing so, Defendant failed to provide its former employees with 60 days' notice of the termination in violation of the WARN Act, failed to reimburse terminated employees for previously incurred work-related expenses, failed to compensate terminated employees for paid time off ("PTO") accrued but not used at the time of their termination, and failed to compensate terminated employees for promised but deferred pay raises. (*Id.*) Plaintiff also brings a California Private Attorneys General Act ("PAGA") claim. The proposed settlement is for $911,500, in addition to costs for settlement administration. (Settlement Agreement at 1.) Once the attorney's fees ($227,875), costs (currently estimated at $21,681.15), incentive award ($12,500), and PAGA penalty ($10,254) are excluded, the net settlement fund is estimated to be $639,189.85. (*See* Settlement Agreement ¶¶ 8, 24-25.)

Plaintiff estimates the maximum liability in this class to be $7,255,500 (excluding civil penalties under California's Private Attorneys General Act ("PAGA")). (*Id.* at 15, Dkt. No. 71.) Thus, the $911,500 settlement amount is 12.6% of the full verdict value, and the $639,189.85 net settlement amount is 8.8% of the full verdict value. The Court requires additional information as to the proposed discount, particularly the risk regarding the liability of the individual Defendants. (*See* Plf.'s Mot. for Settlement Approval at 14-15.) While Plaintiff asserts that the liability of the individual Defendants is not certain under California Labor Code § 558.1 and alter ego liability, Plaintiff provides no authority to allow the Court to determine the extent of those risks. Thus,

2

Plaintiff must fully explain the risks of demonstrating liability as to the individual Defendants, citing to specific case law and facts, and why these risks warrant the proposed discount.

### B. Calculation of Settlement Shares

A class member's share of the settlement is calculated as two "Portions." (Settlement Agreement ¶ 13, Dkt. No. 71-2.) First, the settlement administrator calculates each class member's "Annualized Compensation Ratio" by dividing the individual class member's annual compensation by the total annual compensation of all class members. (*Id.*) The settlement administrator will then multiply the class member's "Annualized Compensation Ratio" by a figure representing 20% of the net settlement amount to obtain "Portion 1" of the class member's settlement payment. (*Id.*)

Second, the settlement administrator adds: (1) the dollar value of the individual class member's PTO that the class member accrued but had not used as of November 30, 2016, (2) the amount of unreimbursed work expenses the class member incurred as of November 30, 2016, and (3) the amount of compensation the class member would have received as of November 30, 2016 from approved but deferred pay expenses that the class member had not received. (Settlement Agreement ¶ 14.) The settlement administrator then divides this figure by the sum of these three figures for all class members to obtain the individual class member's "Unpaid Compensation & Expenses Ratio." The class member's "Unpaid Compensation & Expenses Ratio" is then multiplied by a figure representing 80% of the net settlement amount to obtain "Portion 2" of the class member's settlement payment. If the class member has no unpaid PTO, unreimbursed expenses, or a deferred raise, the class member's Portion 2 will be zero.

The Court requires further explanation on why the 20/80 ratio for Portions 1 and 2 was chosen.

### C. PAGA Claim

The Court requires information on the value of the PAGA claim. The Court also requires that Plaintiff address whether he submitted a copy of the settlement to the Labor and Workforce Development Agency ("LWDA"), and whether he has received any comments from the LWDA. *See* Cal. Labor Code § 2699(l)(2) ("The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court"); *see also Private Attorney Generals Act (PAGA)*,

3

CALIFORNIA LABOR & WORKFORCE DEVELOPMENT AGENCY, http://www.labor.ca.gov/Private_Attorneys_General_Act.htm (last visited Dec. 17, 2018). If the LWDA has provided any comments, the comments should be attached as an exhibit to the supplemental brief.

### D. *Cy Pres* Beneficiary

The Settlement Agreement provides that if the total amount of the cashed settlement checks exceeds 90% of the net settle fund but is less than 100%, the remainder will be put in a *cy pres* fund. (Settlement Agreement ¶ 16(b).) Per the Procedural Guidance, the parties should identify their chosen *cy pres* recipients and explain how those recipients are related to the subject matter of the lawsuit and the class members. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (explaining that the *cy pres* distribution "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity").

### E. Incentive Payment

The Settlement Agreement proposes an incentive payment of $12,500 to Plaintiff Reynolds. (Settlement Agreement ¶ 24.) "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (internal quotation omitted). "Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." *Id.* at *7. The Court requires additional briefing on whether the work performed by Plaintiff warrants the requested incentive awards, including the amount of time and work Plaintiff has put into the case.

### F. Notice Plan

The Settlement Agreement requires notice be provided by mail. (Settlement Agreement ¶ 30.) The notice will notify the class member of their annual compensation, the amount of PTO accrued but not used, the amount of unreimbursed work expenses, and the amount of compensation the class member would have earned from approved but deferred pay increases.

4

The Settlement Agreement also requires that the settlement administrator e-mail the notice to class members for whom it has e-mail addresses, and provide an estimate of the settlement payment the class member would receive if the settlement receives final approval. (*Id.*) Plaintiff shall clarify whether class members who only receive notice by mail will also receive an estimate of the settlement payment the class member will receive.[1]

### G. CAFA Notice

The Class Action Fairness Act ("CAFA") requires that notice of a settlement be given to the appropriate government officials. 28 U.S.C. § 1715(b). The parties should address whether CAFA notice is required and if so, when it will be given.

### H. Class Notice

#### i. What does the Settlement provide? (Section 6)

The Class Notice breaks down the different components of the settlement amount, including attorney's fees and costs and the incentive award. (Notice § 6.) The Class Notice does not appear to identify the PAGA award, which will come out of the $911,500 settlement amount. (Settlement Agreement ¶ 1(n).) Plaintiff shall indicate whether he intends to correct this.

#### ii. When will I get my Settlement Check? (Section 8)

The Class Notice states that checks will be mailed ten days after final approval. (Notice § 8.) The Settlement Agreement, however, provides that checks will be mailed within 30 days of the final approval. (Settlement Agreement ¶ 8.) Plaintiff shall explain the discrepancy.

#### iii. May I speak at the Final Approval Hearing? (Section 16)

The Class Notice states that class members who do not file a written objection must ask for permission to speak at the final approval hearing. (Notice § 16.) It is not clear why permission is required. Plaintiff shall explain why permission is required, and identify other cases that have required that permission be granted.

Additionally, there appear to be a number of typos in this section that should be corrected. (*E.g.*, Notice § 16 ("you are automatically entitled to appear the [sic] Final Approval Hearing"); *id.*

---

[1] The Court notes that the proposed Class Notice refers to a "Class Member Information Form," but that form does not appear to have been provided. (*See* Notice § 9, Dkt. No. 71-3.)

("you may ask for permission to speak at the Final Approval Hearing To [sic] speak at").

IT IS SO ORDERED.

Dated: February 5, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge