1  Steven M. Tindall (CA Bar No. 187862)
   smt@classlawgroup.com
2  GIBBS LAW GROUP LLP
   505 14th Street, Suite 1110
3  Oakland, CA 94612
   Telephone:  (510) 350-9700
4  Facsimile:  (510) 350-9701

5
   John H. Douglas (CA Bar No. 178966)
6  DOUGLAS LAW OFFICES
   jdouglas@douglaslegal.com
7  100 Pine Street, Suite 1250
   San Francisco, CA 94111
8  Telephone:  (415) 794-4751
   Facsimile:  (415) 795-3432
9

10

11              UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF CALIFORNIA
12

13
   J. JASON REYNOLDS,                    Case No. 4:17-cv-00204-KAW
14
          Plaintiff, on behalf of himself and all
15     others similarly situated,            PLAINTIFF'S NOTICE OF MOTION AND
                                             MOTION FOR FINAL APPROVAL OF CLASS
16            v.                             ACTION SETTLEMENT AND FOR
                                             ATTORNEYS' FEES, COSTS, AND SERVICE
17                                           AWARDS
   DIRECT FLOW MEDICAL, INC; DAN
18 LEMAITRE; JOHN DAVID BOYLE;
   GORDON BISHOP; PAUL LAVIOLETTE;          Date:  August 29, 2019
19 and YUVAL BINUR,                         Time:  1:30 p.m.
                                            Judge:  Hon. Kandis A. Westmore
20        Defendants.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................... 1

I.      INTRODUCTION .......................................................................................................... 2

II.     FACTUAL BACKGROUND ......................................................................................... 2

III.    PROCEDURAL BACKGROUND ................................................................................ 3

IV.     TERMS OF THE PROPOSED SETTLEMENT ........................................................... 5

V.      THE COURT SHOULD APPROVE THE PROPOSED CLASS ACTION
        SETTLEMENT .............................................................................................................. 8

        A.      Plaintiff and Class Counsel Have Adequately Represented the Class ................ 8

        B.      Plaintiff's Counsel Negotiated the Settlement at Arm's Length ....................... 9

        C.      The Relief Provided to the Class is Substantial .............................................. 10

                1.      Continued litigation through trial and appeals would have entailed substantial
                        costs, risks, and several years of delay .............................................. 11

                2.      The Settlement provides for an effective distribution of proceeds to the Class 12

                3.      The terms of the requested award of attorney's fees and costs, including timing
                        of payment, also support settlement approval ..................................... 13

                4.      The parties have no other agreements pertaining to the Settlement ............ 14

                5.      The Settlement treats all Settlement Class Members equitably ................. 14

                6.      Class Members' Response to the Settlement was uniformly positive ............ 16

VI.     PLAINTIFF'S COUNSEL SEEK REASONABLE FEES AND COSTS ..................... 17

        A.      Legal Standard .............................................................................................. 17

        B.      The Fee Request is also Reasonable under the Percentage-of-the-Fund
                Method .......................................................................................................... 18

        C.      Plaintiffs' Fee Request is Reasonable under the Lodestar Method .................. 18

VII.    PLAINTIFFS' COST REQUEST IS REASONABLE AND PROPER ......................... 21

VIII.   PLAINTIFF'S REQUESTED SERVICE PAYMENT IS APPROPRIATE ................... 22

CONCLUSION ...................................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Altamirano v. Shaw Indus., Inc.*,

2015 WL 4512372 (N.D. Cal. 2015) ............................................................ 14

*Bellinghausen v. Tractor Supply Co.*,

306 F.R.D. 245 (N.D. Cal. 2015) ................................................................. 23

*Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*,

778 F. Supp. 297 (E.D. La. 1991) ................................................................ 11

*Ching v. Siemens Indus., Inc.*,

2014 WL 2926210 (N.D. Cal. 2014) ............................................................ 22

*Covillo v. Specialtys, Café*,

2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ................................................. 22

*Craft v. Cnty. of San Bernardino*,

624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................. 21, 22

*G. F. v. Contra Costa Cty.*,

No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ............. 9

*Garner v. State Farm Mut. Auto. Ins.*,

2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................................... 23, 24

*Glass v. UBS Fin. Servs., Inc.*,

2007 WL 221862 (N.D. Cal. 2007) ............................................................. 23

*Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998) ....................................................... 17, 18, 19

*In re Activision*,

(N.D. Cal. 1989) 723 F. Supp. 1373 ........................................................... 18

*In re Bluetooth Headset Prods. Liab. Litig.*,

654 F.3d 935 (9th Cir. 2011) ................................................................ 17, 19

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d ................................................................................................................ 22

*In re M.D.C. Holdings Sec. Litig.*,
  1990 WL 454747 (S.D. Cal. 1990) ................................................................................ 22

*In re Media Vision*,
  913 F. Supp. ...................................................................................................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ........................................................................................... 10

*In re Pacific Enterprises Sec. Litig.*,
  (9th Cir. 1995) 47 F.3d 373 ............................................................................................. 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................................................... 17

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ............................................................................................. 19

*Lewis v. Textron Auto. Co.*,
  935 F. Supp. 68 (D.N.H. 1996) .................................................................................. 12, 13

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 11

*Linney v. Cellular Alaska Partnership*,
  1997 WL 450064 (N.D. Cal. 1997) ................................................................................ 22

*Nat'l Rural Telecomms. Coop. v. DirectTV*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir.1989) ............................................................................................ 18

*Ross v. U.S. Bank Nat. Ass'n*,
  2010 WL 3833922 (N.D. Cal. 2010) .............................................................................. 23

*Ruch v. AM Retail Grp.*,
  2016 WL 5462451 (N.D. Cal. Sept. 28, 2016) .............................................................. 22

iii

*Sadowska v. Volkswagen Grp. of Am.,*
  2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ............................................................. 13

*Schwarz v. Sec'y of Health & Hum. Servs.,*
  73 F.3d 895 (9th Cir. 1995) ...................................................................................... 19

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9thCir. 1990) ................................................................................... 18

Smith v. ABC Training Ctr. of Maryland, Inc.,
  2013 WL 3984630 (D. Md. 2013) ............................................................................. 12

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) .................................................................................... 18

*Steiner v. Am. Broad. Co., Inc.,*
  248 Fed. Appx. 780 (9th Cir. 2007) .......................................................................... 21

*United Steelworkers of Am. V. Phelps Dodge Corp.,*
  896 F. 2d 403 (9th Cir. 1990) ................................................................................... 20

*Van Vranken v. Atlantic Richfield Co.,*
  901 F.Supp. 294 (N.D. Cal. 1995) ...................................................................... 20, 22

*Viceral v. Mistras Grp., Inc.,*
  2016 WL 5907869 (N.D. Cal. 2016) ......................................................................... 10

*Villegas v. J.P. Morgan Chase & Co.,*
  2012 WL 5878390 (N.D. Cal. 2012) ......................................................................... 10

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) .................................................................................. 21

*In re Volkswagen* ............................................................................................... 8, 10

*Wren v. RGIS Inventory Specialists,*
  2011 WL 1230826 (N.D. Cal. 2011) ......................................................................... 18

**Statutes**

29 U.S.C. § 2102(b)(2)(A) ......................................................................................... 11

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

California Labor Code § 1400(b)............................................................................................ 12

California Code of Civ. Pro. § 493.010 ................................................................................. 3

Labor Code § 203.............................................................................................................. 16

Labor Code § 558.............................................................................................................. 12

Labor Code § 558.1................................................................................................ 5, 12, 16, 20

Labor Code § 2698............................................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 23 ................................................................................. 8, 10

Federal Rule of Civil Procedure 23(e)(2) ...................................................................... 8, 9, 14

Federal Rule of Civil Procedure 23(e)(2)(B) .................................................................. 9

Federal Rule of Civil Procedure 23(e)(2)(C) .......................................................... 10, 13, 16

Federal Rule of Civil Procedure 23(e)(2)(C)(ii) ........................................................... 13

Federal Rule of Civil Procedure 23(e)(2)(C)(iv), (e)(3) ................................................ 14

Federal Rule of Civil Procedure 23(e)(2)(D) ................................................................ 14

Federal Rule of Civil Procedure 23(e)(B)(2) ................................................................ 8

Federal Rule of Civil Procedure 23(e)(2)(A) ................................................................ 8

Federal Rule of Civil Procedure 23(e)(3) ..................................................................... 10

Federal Rule of Civil Procedure 23(h)............................................................................ 22

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vi

1

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**  PLEASE TAKE NOTICE that on August 29, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Kandis A. Westmore, Plaintiff J. Jason Reynolds will move, and hereby does move, for an Order granting final approval of the Settlement Agreement attached as Exhibit A to the accompanying Declaration of Steven M. Tindall as fair, adequate, and reasonable and granting Plaintiff's request for an award of attorneys' fees, litigation costs, and class representative service awards.  Plaintiff's motion is based on this notice of motion and motion; the accompanying Memorandum of Points and Authorities; the declarations of Steven M. Tindall and John Douglas and all attachments thereto (including the Settlement Agreement itself); the declaration of settlement administrator CPT Group and the attachment thereto; the [Proposed] Order Granting Motion for Final Approval of Class Action Settlement; and all other papers filed and proceedings had in this action.

DATED: July 25, 2019                              Respectfully submitted,

**GIBBS LAW GROUP LLP**

By: ___ */s/ Steven M. Tindall* ___
    Steven M. Tindall

**DOUGLAS LAW OFFICES**
John H. Douglas

---

1

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On March 7, 2019, this Court granted preliminary approval to the $911,500 class action settlement between Plaintiff J. Jason Reynolds and Defendant Direct Flow Medical, Inc. ("DFM") and the individual defendants named in the case.  Pursuant to the Court's Order, the settlement administrator, CPT Group, Inc., sent out notice to the 202 Class Members, informing them of the Settlement and their options to participate in, opt out of, or object to the Settlement.  The notice process was successful:  CPT Group was able to locate a current mailing addresses for every Class Member. The Class Members' response to the Settlement has been overwhelmingly positive:  as of the deadline for submitting timely opt-out requests and objections on July 9, 2019, zero Class Members objected to the Settlement, and zero Class Members chose to opt out of the Settlement.  Moreover, as of the date of this filing, no Class Member has submitted an untimely objection or opt-out request.

Because the Settlement is a fair, adequate, and reasonable result for the Class—especially in light of the risks of non-payment that Plaintiff and the Class faced—Plaintiff respectfully requests that the Court grant final approval to the Settlement, grant Plaintiff's request for attorneys' fees and costs, and grant Plaintiff's request for a Class Representative Service Award.

**II.   FACTUAL BACKGROUND**

DFM was a medical technology company that effectively shut down in late November 2016, when it laid off the vast majority of its workforce, including Plaintiff.  (First Amended Complaint ("FAC"), Dkt. # 14, ¶¶ 6, 25.  Prior to the mass layoff, DFM employed approximately 140 workers at its headquarters in Santa Rosa and 60 in its manufacturing facility in Lake Forest, California.  DFM's financial position deteriorated over the course of 2016.  In the Summer of 2016, DFM began deferring scheduled salary increases for certain employees.  (*See id.* at ¶ 27.)  In August 2016, DFM reached an understanding with a potential investor to provide $100 million in additional financing to DFM.  (*Id.,* ¶ 30.)  The investor, however, backed out of this deal on November 16, 2016.  (*Id.,* ¶ 33.)  On November 18, 2016, DFM furloughed virtually all of its workforce, including Plaintiff, placing them on leaves of absence without pay.  (*Id.,* ¶ 22.)  At a company-wide meeting held that day, employees were told that although they were being furloughed due to lack of funding, they might receive compensation for their

unpaid wages in the future. (*Id.*) They were not told at that time that they had been or would be terminated. (*Id.,* ¶ 24).

On or about November 30, 2016, DFM announced the termination of nearly all of its workforce, including Plaintiff. (*Id.,* ¶ 25.) At the time of their termination, DFM employees were owed compensation for hours worked and unused PTO. (*Id.,* ¶ 26.) A November 30, 2016, email from DFM to employees acknowledged that they were owed these wages but "[u]nfortunately, given that we are out of funds, **we cannot pay your final check and any PTO you might have accrued**." (emphasis in original). (*Id.,* ¶¶ 26-27.) Employees were later paid for hours worked during the three-day period of November 15-18 but were not paid for unused PTO or any time worked after November 18, 2016. (*See id.,* ¶ 28.) Additionally, many employees, including Plaintiff, had incurred business expenses during the course of their employment that were not reimbursed. (*Id.*) DFM's employees, including Plaintiff, were also owed back wages for their salary increases that were granted but deferred. (*Id.,* ¶ 27.)

DFM's board members and executive officers decided not to pursue a public bankruptcy but instead initiated a "general assignment for benefit of creditors," or "ABC." (*Id.,* ¶ 35.) In California, an ABC is a private process for liquidating insolvent debtors pursuant to statutory standards set forth in California Code of Civ. Pro. § 493.010. In February 2017, Class Members were notified by mail of the ABC proceeding and a July 7, 2017 deadline to submit any claim against DFM's liquidated assets. (*Id.* at ¶ 36.) Plaintiff and other Class Members submitted claims for assets from the ABC, but none of them has received any payment in response to these claims.

## III.    PROCEDURAL BACKGROUND

Plaintiff filed a class action complaint against DFM on January 13, 2017, alleging that, in terminating its workforce in November 2016, DFM failed to (a) provide its employees with the 60 days' notice of termination required by the federal and state WARN Acts, (b) reimburse them for work-related expenses, (c) pay them for PTO they had accrued but not used, and (d) provide them with pay increases that had been granted but deferred. Plaintiff also named as Individual Defendants DFM officers and directors who Plaintiff alleged participated directly or indirectly in the decision to terminate Plaintiff and proposed Class Members—including Defendants Dan Lemaitre (president and

CEO), John David Boyle (Chief Financial Officer), Gordon Bishop (Chief Technology Officer), Paul LaViolette (member of Board of Directors), and Yuval Binur (member of Board of Directors).

Defendants moved to dismiss or stay the complaint (Dkt. # 12) but withdrew it after Plaintiff's Counsel advised them of Plaintiff's intention to amend the complaint. (Dkt. # 13.) Plaintiff did so, adding factual allegations concerning the liability of the Individual Defendants and naming an additional defendant, Direct Flow (Assignment for the Benefit of Creditors), LLC. (Dkt. # 14.)

Plaintiff served written discovery on Defendants. (Tindall Decl., ¶ 4.) Plaintiff's Counsel also deposed Defendant Boyle. (*Id.,* ¶ 3.) In the course of discovery, Plaintiff learned that Direct Flow (Assignment for the Benefit of Creditors), LLC, was a shell company, created solely for the purpose of facilitating the ABC proceeding. (*Id.,* ¶ 5.) Plaintiff therefore agreed to dismiss this defendant and instead sought and obtained relevant information from it through a subpoena. (*Id.*)

In March 2018, the parties mediated the case with experienced employment mediator Cynthia Remmers in a session that lasted approximately 12 hours. (Tindall Decl., ¶ 9.) The parties made progress but were unable to resolve the litigation. (*Id.*) Regular settlement negotiations continued, with Ms. Remmers' assistance. (*Id.*) Plaintiff's Counsel continued to prepare for class certification, serving additional discovery on Defendants and taking three additional depositions. (Tindall Decl., ¶ 3.) Plaintiff's Counsel also obtained 19 Class Member declarations in support of certification. (*Id.*, ¶ 6.)

On September 21, 2018, Plaintiff moved for class certification. (Dkt. ## 64, 65.) Following the filing of Plaintiff's motion but before Defendants' deadline to oppose, the parties reached a settlement of all claims in the case. On January 31, 2019, Plaintiff moved for preliminary approval of the Settlement. (Dkt. # 71.) By Order of February 5, 2019 (Dkt. # 72), the Court ordered supplemental briefing regarding the motion, which Plaintiff's Counsel provided on February 20, 2019. (Dkt. # 73.)

On March 7, 2019, the Court granted preliminary settlement approval. (Dkt. # 75.) The Court found for the purposes of class action settlement approval, the Rule 23(a) requirements for class certification are satisfied here—finding that (a) numerosity exists because the settlement class includes over 200 persons; (b) commonality exists because the claims are based on the mass termination of class members on November 30, 2016; (c) typicality exists because Plaintiff suffered the same injury as the rest of the class; and (d) adequacy exists because there is no evidence that Plaintiff or Plaintiff's

Counsel have any conflicts or that they would not vigorously prosecute the case on behalf of the Class. (*Id.* at 8.)  The Court concluded further that the common question of Defendants' termination of the class members on the same day and their failure to pay compensation predominates over individual issues.  (*See id.*)  The Court, therefore, provisionally certified the Class for settlement purposes, appointed Plaintiff as the class representative and Plaintiff's Counsel as Class Counsel.  *Id.* at 15-16.

The Court further noted that Plaintiff had identified risks to finding WARN Act liability as to any Defendant and that Defendants had similarly identified substantial risks to holding the individual Defendants liable, which could preclude a financial recovery altogether due to DFM's financial insolvency.  (*Id.* at 12.)  The Court also noted the risks Plaintiff faced in demonstrating Individual Defendants' liability for the California Labor Code claims—in part because there was evidence that Defendants LaViolette, Binur, and Boyle were not directly involved in the alleged violations.  In addition, the case law regarding a finding of individual liability under Labor Code § 558.1 is evolving and reflects a split in the state superior courts regarding whether it creates a private right of action.  (*Id.*)

The Court found further that the parties had reached the Settlement "via an arms-length, non-collusive, negotiated resolution," which weighs in favor of preliminary approval.  (*Id.* at 13.)  The Court also found appropriate the two proposed *cy pres* recipients described in Plaintiff's supplemental briefing:  Legal Aid SoCal, and California Human Development, which are two non-profit entities "that focus on the needs of unemployed workers in the locations where Defendant DFM's facilities were located."  (*Id.* at 14.)  The Court had requested changes to the Class Notice and notice procedures, which the Plaintiff modified accordingly.  The Court approved the revised Class Notice.

Plaintiff now moves for final approval so that Class Members can receive the benefits of the $911,500 Settlement reached in this action.

## IV.    TERMS OF THE PROPOSED SETTLEMENT

**Proposed Class.**  The Settlement Class is defined as "all of Defendants' employees (other than any named individual Defendants) who worked at one or both of Defendants' facilities in California who were terminated from employment on or around November 30, 2016, as part of a mass layoff or plant closing."  (Tindall Decl., Exh. A ("Settlement"), ¶ 1(b); *see* Dkt. # 71 at 6.)

**Benefits to the Settlement Class.**  Class Members will each receive a portion of the Net

Settlement Fund (that is, the gross settlement of $911,500.00, minus any incentive award, and attorneys' fees and costs approved by the Court, and payment to the LWDA).

**Calculation of Benefits.**  Individual settlement awards to Class Members will be calculated by the Settlement Administrator based on four factors:  (1) the Class Member's annualized compensation at DFM as of November 30, 2016; (2) the amount of PTO the Class Member had accrued but not used as of that date; (3) the amount of unreimbursed expenses the Class Member had incurred as of that date; and (4) the amount of compensation the Class Member would have earned because of approved but deferred pay increases.  (Settlement, ¶ 11.)

**PAGA Penalties.**  Plaintiff's complaint alleges claims for PAGA penalties, Labor Code § 2698 *et seq.*  The parties agreed to allocate 1.5% of the Settlement Amount, or $13,672, for PAGA penalties, subject to Court approval.  Pursuant to PAGA, 75% of this amount (or $10,254) shall be paid to the LWDA, and the remaining 25% (or $3,418) shall be distributed to the Settlement Class Members as part of the Net Settlement Fund.  Plaintiff's Counsel submitted a copy of the Settlement to the LWDA on February 1, 2019 and have not received any comments back from the LWDA.  (Tindall Decl., ¶ 21.)

**Notice Plan.**  On May 10, 2019, the Settlement Administrator mailed all 202 Class Members a Notice[1] notifying each Class Member of his or her annualized compensation, amount of PTO the Class Member had accrued but not used, amount of unreimbursed work expenses, and amount of approved but deferred pay increases (all as of November 30, 2016), as well as an estimate of the settlement payment the Class Member would receive if the Settlement receives final approval.  (Declaration of Chris Lawless (On Behalf of CPT Group, Inc.) with Respect to Notification and Settlement Administration ("CPT Decl."), ¶ 6.)  The Settlement Administrator also emailed the Court-approved Notice to all Class Members for whom it has email addresses.  (*Id*.)

**Dispute, Objection, and Opt-Out Procedures.**  Class Members had 60 days from the mailing date of the Notice (that is, until July 9, 2019) to:  (1) dispute the components of the individual Settlement award, (2) opt out of the Settlement, or (3) object to the terms of the Settlement or to Class

---

[1] The Notice agreed upon by the Parties and edited in light of the Court's instructions is attached as Exhibit B to the Tindall Declaration.

Counsel's request for fees and costs or to Plaintiff's proposed enhancement award. (CPT Decl. ¶ 6.) As of the exclusion and opt-out deadline (and as of this filing), *zero* Class Members opted out of the Settlement class and *zero* Class Members objected to the Settlement. (*Id..*, ¶¶ 9, 10.) Six Class Members submitted challenges to components of their individual settlement awards that CPT Group is currently reviewing. (*Id.,* ¶ 11.) CPT Group will resolve such challenges by reviewing any records the Class Member provides as well as Defendants' records and will confer with the Parties. (*Id.*)

Per the Court's instructions, the Notice stated that Class Members who have not opted out may speak at the final approval hearing if they wish and need not ask permission to speak. (*Id.*, Exh. A, p. 6, § 16.)

**Release of Claims.** If the Settlement is granted final approval, Plaintiff and Settlement Class Members shall fully release the Defendants from all claims that were asserted in the operative complaint (the FAC) or that could have been asserted based upon the factual allegations set forth in the operative complaint. (Tindall Decl., Exh. A, ¶ 49.)

**Funding of Settlement and Payments.** Defendants have agreed to pay the Gross Settlement Amount of $911,500.00 in addition to the costs of settlement administration, which CPT Group has stated will be no more than $12,000. (Settlement, ¶ 1(m); CPT Group Decl. ¶ 16.) The total amount Defendants are paying to resolve this matter, therefore, is $923,500. This amount will be transferred to the Settlement Administrator within 10 business days of the Settlement's Effective Date. (Tindall Decl., Exh. A ("Settlement"), ¶ 7.) Under the Settlement, Plaintiff's Counsel may seek reasonable litigation costs and attorneys' fees of up to 25% of the total settlement value of $923,500, or $230,875,[2] the costs they have incurred ($22,486.44), and an Enhancement award not to exceed $12,500. The remainder of the Settlement Amount (the "Net Settlement Fund")—which if the Court approves Plaintiff's requests will total $635,384.56[3]—will be apportioned among Settlement Class Members as described above. Class Members do *not* need to submit a claim to receive their settlement payment.

Within 30 days after the "Effective Date" of the Settlement (which is ten days after final

---

[2] 25% of $923,500 = $230,875.
[3] That is, $911,500 - $12,500 (class representative service award) - $22,486.44 (costs) - $230,875 (fees) - $10,254.00 (PAGA payment to the LWDA) = $635,384.56.

approval), Class Members will be paid by checks that, per the Court's Order, will remain negotiable for 180 days from when they are issued.  (Settlement, ¶¶ 8, 16; Dkt. # 75 at 14.)  The Settlement Administrator will send a reminder email and/or post card to those Class Members whose checks remain uncashed thirty days before the end of the 180-day period.  (*Id.*, ¶ 16.)  Settlement payments not negotiated within the 180-day period shall be distributed to participating Settlement Class Members on a pro rata basis if the amount of uncashed settlement checks is less than 90% of the Net Settlement Fund; if the unnegotiated settlement payments equal or exceed 90% of the Net Settlement Fund, the remainder will be put in a *cy pres* fund and distributed to the two Court-approved *cy pres* recipients: Legal Aid SoCal, and California Human Development.  (Dkt. # 75 at 14.)

## V.   THE COURT SHOULD APPROVE THE PROPOSED CLASS ACTION SETTLEMENT

The revised Federal Rule of Civil Procedure 23 provides a list of factors to consider at the final approval stage when assessing whether a proposed class action settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(B)(2).  Previously, the Ninth Circuit and other courts had developed their own lists of factors to be considered; the revised Rule 23 "directs the parties to present [their] settlement . . . in terms of [this new,] shorter list of core concerns."  Fed. R. Civ. P. 23(e)(2), Advisory Committee's Notes.  Plaintiffs analyze each of the Rule 23(e)(2) factors below, bearing in mind the Ninth Circuit's admonition that during this analysis the key "underlying question remains this: Is the settlement fair?"  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018); *accord* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee's Notes.  As discussed below, the Settlement here is fair, reasonable, and adequate, and the Rule 23(e)(2) factors weigh in favor of approval.  After Settlement Notice was sent to every Class Member, the Class Members' response has been overwhelmingly positive—with no Class Member objecting or opting out.

### A.   Plaintiff and Class Counsel Have Adequately Represented the Class

Under Rule 23(e)(2)(A), the Court should consider whether the class representative and class counsel have adequately represented the class.  Here, Mr. Reynolds has diligently represented the Class. He has actively participated in the case over two years.  As he notes in his declaration, he spent between 154 and 221.5 hours performing tasks related to this case.  Declaration of Plaintiff J. Jason Reynolds in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Reynolds Decl."),

1    Dkt. # 73-1 at ¶ 16.  He assisted counsel in drafting the complaint, contacted potential class members to

2    obtain declarations in support of the case, and attended the 12-hour mediation session.  (*Id.*, ¶ 15;

3    Tindall Decl., ¶ 20.)  Throughout the case, Plaintiff stayed apprised of the litigation, and has made

4    decisions with the best interests of the Class in mind.  (*See* Reynolds Decl., ¶ 15.)

5            Plaintiff's Counsel have also more than adequately represented the Class.  They have vigorously

6    prosecuted this case since its inception—serving extensive written discovery, conducting four

7    depositions of Defendants, interviewing dozens of proposed class members, and briefing class

8    certification.  (Tindall Decl., ¶ 3.)  Plaintiff's Counsel devoted a total of 1,422.4 hours litigating this

9    case.  (*Id.*, ¶ 38.)  Plaintiff's Counsel have also advanced over $22,000 in litigation expenses on behalf

10   of the class, with no assurance that they would be reimbursed.  (*Id.*, ¶¶ 41-42.)  Plaintiff's Counsel also

11   have a combined four decades of experience litigating employment class actions and have brought that

12   experience to bear on behalf of the Class.  (*Id.*, ¶¶ 26-29; Douglas Decl., ¶¶ 2-5.)

13           **B.    Plaintiff's Counsel Negotiated the Settlement at Arm's Length**

14           Rule 23(e)(2)'s second factor relates to whether the settlement was negotiated at arm's length.

15   Fed. R. Civ. P. 23(e)(2)(B).  Plaintiff's Counsel conducted extensive negotiations assisted by

16   experienced mediator Cynthia Remmers[4]—including the 12-hour mediation session as well as

17   numerous phone calls with Ms. Remmers to conduct negotiations in the months following the

18   mediation.  (Tindall Decl., ¶ 9.)  Rule 23(e)(2)(B), Advisory Committee's Notes acknowledge that "the

19   involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear

20   on whether they were conducted in a manner that would protect and further the class interests."  Rule

21   23(e)(2)(B), Advisory Committee's Notes; *accord G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ,

22   2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (use of an experienced neutral mediator confirms

23   that the settlement is non-collusive).  In addition, Plaintiff's Counsel are experienced employment class

24   action attorneys well-versed in the substantive law, class action practice, and the particular facts of this

25   case.  (*See* Tindall Decl., ¶¶ 26-29.)

26

27   _____

28   [4] *See* Tindall Decl., Exh. C (Remmers C.V. and list of presentations).

9

Plaintiff also negotiated the case only after extensive discovery—including the taking of four depositions of Defendants, conducting dozens of interviews with proposed Class Members and after filing the certification motion.  (Tindall Decl., ¶¶ 3-4; Dkt. # 64.)

### C.    The Relief Provided to the Class is Substantial

Rule 23 provides that the third factor for courts to consider is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  Under this factor, the "central concern" is relief to class members.  Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Notes; *see In re Volkswagen*, 895 F.3d at 611 (the "factors and warning signs" identified in *Bluetooth* "are just guideposts"; the focus is fairness).

The relief to be provided under the Settlement is substantial—particularly in light of the financial circumstances of the primary defendant, DFM, which is financially insolvent.  Plaintiff's Counsel estimate that the Settlement compensates Class Members in the aggregate for nearly 68% of the PTO, unreimbursed expenses, and retroactive pay increases that they are owed.  (Tindall Decl., ¶ 18.)  In addition, the amount that Defendants are paying to resolve the case—$911,500 + $12,000 in administration costs, or $923,000—represents a substantial percentage (13.14%) of the total estimated damages in the case if Plaintiff were able to demonstrate full liability on all claims.[5]  Given DFM's insolvency, the risks of demonstrating liability against the Individual Defendants and the risks of further litigation (discussed below), this Settlement provides substantial benefits to the Class.[6]

---

[5]  $923,000 (total Settlement amount plus costs of administration) ÷ $7,024,436 (total estimated damages) = 13.14%.  (*See* Tindall Decl., ¶ 18.)

[6]  As the Court noted in its preliminary approval Order, courts in this district have approved settlements with similar discounts, depending on the strength of the case and the risks of further litigation.  Dkt. # 75 at 9 (citing *Viceral v. Mistras Grp., Inc.,* 2016 WL 5907869 at *7 (N.D. Cal. 2016) (approving settlement representing 8.1% of total verdict value)); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks; *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. 2012) (preliminarily approving settlement representing 15% of the potential recovery).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.   Continued litigation through trial and appeals would have entailed substantial costs, risks, and several years of delay

Class actions involve high levels of cost, risk, and duration, which support the Ninth Circuit's "policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).  If the parties had not settled here, the ensuing litigation would have been risky, protracted, and costly.  Plaintiff's Counsel believe that they could demonstrate the liability of DFM for its act of terminating its workforce without providing WARN notice.  DFM, however, is financially insolvent and effectively no longer exists as a corporate entity.  Even if Plaintiff's Counsel could demonstrate liability and the full extent of its damages, DFM would simply not be able to pay a judgment.  In addition, to succeed in demonstrating WARN Act liability, Plaintiff would need to overcome DFM's primary defense, the "unforeseen business circumstances" exception, which excuses employers from providing 60 days' notice of a layoff if it is caused by "business circumstances that were not reasonably foreseeable as of the time that notice would have been required."  29 U.S.C. § 2102(b)(2)(A).  DFM here would argue that 60 days prior to the termination, it was not facing imminent shutdown because its potential investor had not indicated it would pull out of the financing deal it had with DFM.  (*See* Dkt. # 73 at 3 (and cited evidence).)

In addition, as described in Plaintiff's Supplemental Preliminary Approval Brief (Dkt. # 73), Plaintiff faced multiple risks in demonstrating that Individual Defendants' actions subject them to liability under the federal WARN Act or the California Labor Code (including the California WARN Act).  (Dkt. # 73 at 5-10.)  First, the federal WARN Act provides that only the "employer" is liable for WARN violations.  *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.,* 778 F. Supp. 297 (E.D. La. 1991), 315-316, *aff'd in part and reversed in part on other grounds,* 15 F.3d 1275 (5th Cir. 1994).  Courts have held that individual officers and directors, such as the Individual Defendants, do not qualify as "employers" for purposes of federal WARN Act liability.  *See id*. at 316 ("the language of the WARN Act . . . suggests that only business entities, not officers and directors of

---

11

corporate employers, should be considered as employers under the Act").[7]

Second, Plaintiff has been unable to find a case finding an individual officer or director liable for a California WARN violation under Cal. Labor Code § 1400(b).

Third, Labor Code § 558.1 does not establish clear liability for Individual Defendants.  Section 558.1 imposes liability on "[a]ny employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802" of the California Labor Code, though not for WARN Act violations. Although Plaintiff contends that Individual Defendants fall under § 558.1, Individual Defendants have maintained that their allegedly minimal involvement in any asserted Labor Code violation does not expose them to liability under § 558.1. (Tindall Decl., ¶ 7.)  California Labor Code § 558.1 is relatively recent (made effective January 1, 2016), so the caselaw is still developing.  Although Plaintiff believes that he would be able to establish § 558.1 liability against some Individual Defendants, Defendants have argued that while the statutory language (including Labor Code § 558, immediately preceding it) creates potential for individual liability *in actions brought by the California Labor Commissioner*, the statute does not create a private right of action that a plaintiff may pursue.  Moreover, because the case law on § 558.1 is evolving, even if Plaintiff had won at trial, the issue of § 558.1 liability could have led to a protracted and costly appeal, potentially taking another two or more years to resolve.

The Settlement, which is worth $911,500, compensates Class Members for a substantial portion of their damages now, rather than waiting for additional litigation in this Court and potentially years on appeal.  It is an excellent result for Class Members given the insolvency of the corporate defendant and the uncertain liability of Individual Defendants.

> **2.    The Settlement provides for an effective distribution of proceeds to the Class**

---

[7] *See also Smith v. ABC Training Ctr. of Maryland, Inc.,* 2013 WL 3984630, at *5 (D. Md. 2013) (citing *Lewis v. Textron Auto. Co.,* 935 F. Supp. 68, 71 (D.N.H. 1996)) ("The Individual Defendants are not a business enterprise and therefore cannot be liable for [the corporation's] alleged failure to comply with the WARN Act, even if those individuals were executives and managers responsible for [the corporation's] abrupt closure.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Settlement provides for an efficient and effective distribution process.  Fed. R. Civ. P. 23(e)(2)(C)(ii).  As CPT Group has indicated, it has located a mailing address for each Class Member.  CPT Decl., ¶ 8.  It was able to locate addresses for all of the Notice Packets that were returned as undeliverable.  *Id.*  Because there is no need for any Class Member to file a claim, every Class Member will receive their Settlement proceeds through a check mailed directly to them at a current mailing address.  The Settlement, therefore, provides an "effective method of distributing relief to the class . . . ."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Moreover, if a Class Member fails to cash his or her settlement check, CPT Group will send a reminder email and post card to them 30 days before the check-cashing deadline.  (Tindall Decl., Ex. A at ¶ 16.)

### 3.   The terms of the requested award of attorney's fees and costs, including timing of payment, also support settlement approval

Under Rule 23(e)(2)(C), the Court considers the terms of any proposed award of attorney's fees, including timing of payment.  As discussed further in Section VI, below, the terms of the fee award requested by Plaintiff's Counsel—amounting to 25% of the Gross Settlement Amount plus reasonable litigation costs—is fully in keeping with the Ninth Circuit's 25% benchmark of attorneys' fees and represents significantly *less* than their fees would be if calculated by a lodestar method.  (Tindall Decl., ¶ 38.)  Plaintiff's Counsel is not seeking a multiplier on their lodestar amount—or even the full value of their lodestar.  Had the fee amount been litigated rather than negotiated, a multiplier could have been awarded and the fees substantially higher.  *Sadowska v. Volkswagen Grp. of Am.*, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) (approving negotiated fee award 1.37 times the lodestar and noting that "[m]ultipliers can range from 2 to 4 or even higher.")

As noted below, Plaintiff's Counsel have also incurred out-of-pocket costs in the amount of $22,486.44.  (Tindall Decl., ¶ 42.)  These costs include filing fees, costs for four depositions, mediation costs, delivery and service charges, and computer research.  (*Id.*, ¶ 30.)  Given that this is a class and representative action, the costs incurred are reasonable.  No Class Member objected to the amount that Plaintiff's Counsel's would seek in fees and costs.

1    Moreover, if the Court grants final Settlement approval and awards attorneys' fees and costs, the

2    fees and costs will be paid at the same time as the payments to Settlement Class Members.  Plaintiff's

3    Counsel, therefore, will be paid only if and when the Settlement Class Members are also compensated.

4    **4.    The parties have no other agreements pertaining to the Settlement**

5    The Court also must evaluate any agreement made in connection with the proposed settlement.

6    *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  Here, the Settlement before the Court is the only agreement

7    between Defendants and Plaintiff.  (Tindall Decl., ¶ 21.)

8    **5.    The Settlement treats all Settlement Class Members equitably**

9    The final Rule 23(e)(2) factor focuses on whether the proposed settlement "treats class members

10   equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include

11   whether the apportionment of relief among class members takes appropriate account of differences

12   among their claims, and whether the scope of the release may affect class members in different ways

13   that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

14   The proposed relief in the Settlement appropriately balances Class Members' interests.  In

15   wage-and-hour class cases, it is common to allocate funds based on the time worked by class members.

16   The parties here propose a variation on such an allocation that treats Class Members more equitably.

17   Class Members earned varying salaries and so would be owed varying penalty payments for the failure

18   to provide WARN notice, which are based on the employees' pay.  In addition, Class Members had

19   accrued different amounts of PTO at the time of their termination and some, but not all, were owed

20   deferred pay increases.  Finally, some Class Members were not reimbursed for thousands of dollars of

21   necessary business expenditures upon their termination, while others had no unreimbursed expenses.

22   It would be unfair to compensate Class Members based only on their annualized compensation,

23   especially given the large amount of unreimbursed expenses and unpaid PTO that some Class Members

24   are owed.  It would be similarly unfair to compensate only those Class Members with unreimbursed

25   expenses, omitting those Class Members without expenses who are still owed other payments. *See,*

26   *e.g.*, *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. 2015) (finding no

27   preferential treatment because the settlement "compensates class members in a manner generally

28   proportionate to the harm they suffered on account of [the] alleged misconduct").  The parties sought to

1   strike an equitable balance to serve the interests of all Class Members.

2          As explained in response to the Court's February 5 Order, each Class Member's Settlement

3   share is calculated as two "Portions":  (1) Portion 1 is calculated by dividing the individual Class

4   Member's annual compensation by the total annual compensation of all Class Members and multiplying

5   this ratio by a figure representing 20% of the net settlement amount (Settlement Agreement, ¶ 13); (2)

6   Portion 2 is calculated by multiplying 80% of the net settlement amount by a ratio reflecting the

7   individual Class Member's PTO, unreimbursed work expenses, and unpaid deferred pay increase

8   relative to the sum of these figures for all Class Members.  (*Id.,* ¶ 14.)  The Court requested further

9   explanation of why the 20/80 ratio for Portions 1 and 2 was chosen, which Plaintiff provided in his

10  supplemental brief.  (*See* Dkt. # 73 at 11-14.)  In short, Plaintiff's Counsel determined that the 80/20

11  ratio was a fair, appropriate way of apportioning the settlement amounts in light of the relative

12  likelihood that Plaintiff and Class Members would be able to recover these components of damages.

13  Portion 1, which is calculated using the individual class member's annual compensation, relates to

14  claims under the federal and state WARN Acts.  If Plaintiff were able to demonstrate the full value of

15  the WARN Act violations, Class Members would be entitled to receive up to 60 days' wages—

16  representing the 60 days of notice of termination that Defendants should have provided but did not.

17         Plaintiffs' Counsel determined that relative to the damages reflected in Portion 2, the WARN

18  Act damages in Portion 1 would be comparatively harder to demonstrate.  First, although the WARN

19  Act damages could amount to *up to* 60 days' wages, in light of Defendants' unforeseen business

20  circumstance defense to the WARN Act claims (as described above), Defendants had a colorable

21  argument that they could not have known that a layoff or was imminent until November 16, 2018, when

22  Haisco informed DFM that it would not be moving forward with the investment in DFM.  Defendants,

23  therefore, could put forth a defense that it could have provided, at most, two weeks' notice and thereby

24  greatly reduce its WARN liability.

25         In addition, as the ABC filing demonstrates, DFM is not solvent.  The only Defendants with

26  resources to pay a WARN Act judgment, therefore, are the Individual Defendants.  As described above,

27  however, Plaintiff's chances to hold Individual Defendants liable for WARN Act violations are

28  hampered by the fact that (a) under the federal WARN Act, officers and directors, such as Individual

Defendants, are not "employers" subject to liability, and (b) under the state WARN Act, no reported case has held an individual officer or director liable. *See* Section V(C)(1), above.

By contrast, the damages that make up Portion 2 relate to their California Labor Code claims for unreimbursed expenses, PTO, and unpaid, deferred pay increases, as well as the Labor Code § 203 claim for Defendants' failure to pay all compensation due at termination. Unlike the WARN Act damages, there is no "unforeseen business circumstances" defense to this liability. DFM, as Class Members' former employer, is liable for these damages. In addition, Individual Defendants' defenses to these damages are less robust than their defense to the WARN Act damages. Unlike WARN, where Individual Defendants can demonstrate that they are not "employers" subject to liability, under Labor Code § 558.1, Plaintiff and Class Members have statutory authority for holding these Defendants accountable. Although demonstrating Individual Defendants' liability on these claims under Section 558.1 is not assured (as described in Section I(A)(2), above), Plaintiff believes, that the likelihood of demonstrating liability for these claims is greater than holding Individual Defendants liable under the WARN Act.

Given the amount of damages potentially available and the relative likelihood of holding DFM and Individual Defendants accountable for the damages reflected in the two Portions,[8] apportioning the settlement amounts on an 80/20 basis was fair and reasonable. Furthermore, Plaintiff's Counsel spoke to more than two dozen Class Members who indicated that the unreimbursed work-related expenses, PTO, and the unpaid, deferred raises were important to them because these amounts represented wages and expenses that they had earned but not been paid. (Tindall Decl. ¶ 16.) Recovering a significant amount of these wages under the settlement, therefore, was important Class Members. The Settlement, with its apportionment of the funds based on these damages, furthers that goal.

### 6.   Class Members' Response to the Settlement was uniformly positive

All of the factors of Rule 23(e)(2)(C), therefore, support final approval. In addition, the response of the Class Members to the Settlement has been overwhelmingly positive. "The reactions of

---

[8] *See* Dkt. # 73 at 12-14 (describing calculation of damages related to claims encompassed in Portion 1 and Portion 2).

1    the members of a class to a proposed settlement is a proper consideration for the trial court." *Nat'l*

2    *Rural Telecomms. Coop. v. DirectTV,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citing 5 Moore's Federal

3    Practice, § 23.85(2)(d) (Matthew Bender 3d ed.)  As the Settlement Administrator has confirmed, no

4    Class Member has objected to the Settlement and no Class Member has opted out.  This virtually

5    uniform Class Member support fully supports the fairness, reasonableness, and adequacy of the

6    Settlement.

7    **VI.    PLAINTIFF'S COUNSEL SEEK REASONABLE FEES AND COSTS**

8          Plaintiffs respectfully request an award of fees amounting to 25% of the settlement fund, or

9    $230,875, and an award of their litigation costs in the amount of $22,486.44.  Plaintiff's fee and cost

10   request is appropriate under both methods the Ninth Circuit uses to determine fees in class action cases

11   because the percentage is fully in line with this Circuit's benchmark fee, and Plaintiff's Counsel's

12   lodestar is substantially less than their fee request.  In other words, rather than seeking a traditional

13   multiplier on their lodestar, Plaintiffs seek a fractional multiplier or "divider" such that the fees

14   requested are less than the lodestar incurred.

15         **A.    Legal Standard**

16   The Ninth Circuit has affirmed the use of two separate methods for determining attorneys' fees in class

17   action cases:  the percentage method and the lodestar method.  *Hanlon v. Chrysler Corp.*, 150 F.3d

18   1011, 1029 (9th Cir. 1998).  The percentage-of-the-fund method awards a reasonable percentage of the

19   settlement fund obtained through the efforts of the plaintiff's counsel.  A "lodestar" calculation

20   multiplies the number of hours reasonably expended on the litigation by counsel's reasonable hourly

21   rates, depending on the region and the experience of the lawyer.  *In re Bluetooth Headset Prods. Liab.*

22   *Litig.*, 654 F. 3d 935, 941 (9th Cir. 2011).[9]  The Ninth Circuit has held that, regardless of whether a

23   court "applies the lodestar or the percentage method, 'we require only that fee awards in common fund

24   cases be reasonable under the circumstances.'"  *Wash. Pub. Power*, 19 F.3d at 1294 fn. 2 (citations

25

26   _____

27   [9] Although the "court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a
     reasonable fee" here, Class Counsel's lodestar exceeds the requested fee award, such that no multiplier
28   is necessary to grant the requested award.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d
     1291, 1295 n.2 (9th Cir. 1994) (citations omitted).

1   omitted); *see also  Staton v. Boeing Co*., 327 F.3d 938, 963 (9ᵗʰ Cir. 2003).  Here, both methods of

2   calculating fees demonstrate the reasonableness of Plaintiff's Counsel's fee request.

3       **B.    The Fee Request is also Reasonable under the Percentage-of-the-Fund Method**

4        "The percentage method means that the court simply awards the attorneys a percentage of the

5   fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029 (citations

6   omitted).  The Ninth Circuit has established a benchmark of 25% of the recovery under the settlement,

7   which may be adjusted or replaced by a lodestar calculation "when special circumstances indicate that

8   the percentage recovery would be either too small or too large in light of the hours devoted to the case

9   or other relevant factors." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311

10  (9thCir. 1990) (awarding 25% benchmark); *see also Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d

11  268, 272 (9th Cir.1989) (establishing 25% of the fund as the "benchmark" award that should be given

12  in common fund cases, subject to adjustments when appropriate).  Several courts in this Circuit,

13  however, have adjusted the benchmark upward to above 30%.  *See In re Pacific Enterprises Sec. Litig*.

14  (9th Cir. 1995) 47 F.3d 373, 379 (affirming 33% fee award); *In re Activision* (N.D. Cal. 1989) 723 F.

15  Supp. 1373, 1375, 1379 (32.8% award); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, *25-

16  29 (N.D. Cal. 2011) (awarding a fee of just under 42%).

17      Although, as described below, the lodestar calculation suggests that an upward adjustment of the

18  benchmark would be appropriate here, Plaintiff's Counsel do *not* seek an upward adjustment of the

19  benchmark and seek only a fee award of 25% of the total Settlement Fund and the costs of settlement

20  administration—that is, 25% of the total amount that Defendants are paying to resolve this case.

21      **C.    Plaintiffs' Fee Request is Reasonable under the Lodestar Method**

22      Under the lodestar method, the first step is to calculate the lodestar by "multiplying a reasonable

23  hourly rate by the number of hours reasonably spent litigating the case." *Staton*, 327 F.3d at 965.  After

24  examining the time and labor required, the court may apply a multiplier to the lodestar in light of

25  certain factors, including:

26          (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3)
            the skill requiste to perform the legal service properly; (4) the preclusion of other
27          employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed
            or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount
28

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Hanlon*, 150 F.3d at 1029 (a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment") (citing *Kerr*); *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 n.7 (9th Cir. 2011) (citing *Kerr* factors).

Plaintiffs' Counsel here expended a total of over 1,422 hours litigating since the inception of this case in January 2017.  *See* Tindall Decl., ¶ 38; Douglas Decl., ¶ 7.  As discussed in Plaintiffs' Counsel's supporting declarations, the time and effort spent were necessary to achieve a favorable resolution of this case.  Plaintiffs' Counsel filed the complaint then amended it to add factual allegations concerning the liability of the Individual Defendants; they also served document requests, interrogatories, and requests for admission on the corporate and individual defendants.  (Tindall Decl., ¶ 3.)  Plaintiff's Counsel also deposed multiple individual Defendants.  (*Id.*)  Plaintiff's Counsel also sought and obtained relevant information through a subpoena to a former Defendant in the case.  (*Id.*, ¶ 4.)  In addition, Plaintiff's Counsel interviewed dozens of Class Members and obtained 19 declarations from them in support of class certification and then moved for certification.  (*Id.*, ¶¶ 3, 6.)  Plaintiff's Counsel also participated in a 12-hour mediation and multiple follow-up negotiation sessions with mediator Cynthia Remmers, which ultimately led to the Settlement.  In light of the tasks performed in the case over the past 2 ½ years, Plaintiff's Counsel's hours are reasonable.  The litigation was conducted efficiently—with the great majority of the work performed by three lawyers:  John Douglas of Douglas Law Offices, and Steven Tindall and Caroline Corbitt of Gibbs Law Group.  (Tindall Decl., ¶ 33; Douglas Decl., ¶ 7.)

The reasonable hourly rate is determined by considering the "experience, skill, and reputation of the attorney requesting fees."  *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).  The court "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Id.*  Plaintiffs' Counsel's hourly rates meet this standard because they are comparable to those of other class action attorneys with

Case 4:17-cv-00204-KAW    Document 77    Filed 07/25/19    Page 27 of 32


similar experience in California.  *See* Tindall Decl., ¶ 35, Douglas Decl.)  .  Moreover, courts in other cases have found Plaintiffs' Counsel's rates to be reasonable.  (*See* Tindall Decl., ¶ 36.)  Rate determinations from other cases are satisfactory evidence of the prevailing market rate.  *United Steelworkers of Am. V. Phelps Dodge Corp.*, 896 F. 2d 403, 407 (9th Cir. 1990).

Multiplying the hours that counsel reasonably spent by their hourly rates results in the lodestar of $835,050.50.  *See* Tindall Decl., ¶ 38; Douglas Decl., ¶ 7.  Plaintiffs, however, are seeking only $230,875 in attorneys' fees.  Plaintiffs' fee request, therefore, means that they are only seeking a *fraction* of their actual lodestar.  They are seeking $604,175 *less* in fees than their lodestar amount. Tindall Decl., ¶ 38.  Plaintiffs' Counsel are not asking for a traditional multiplier upon their lodestar but a fractional multiplier or "divider" of 0.28.  *Id.*  As discussed below, application of the *Kerr* factors— which support the awarding of a substantial multiplier here—demonstrates that Plaintiffs' fee request is reasonable.

**Time and Labor Required.**  The time and labor required to litigate this case were substantial. The more than 1,422 hours Plaintiffs' Counsel have collectively expended this action were reasonably spent in light of the extensive, contentious litigation that led up to the Settlement.

**Novelty and Difficulty of the issues involved**.  This case involved novel and difficult issues relating to the liability of the Individual Defendants under the California WARN Act as well as under California Labor Code § 558.1 and alter ego liability under California law.

**The Requisite Legal Skill Necessary.**  As discussed above, Plaintiffs' Counsel demonstrated legal skill in bringing this action to a favorable resolution despite the substantial risks faced by the Plaintiff Class—the most prominent of which were the insolvency of the main Defendant in this action and the uncertain liability of the Individual Defendants.  Despite these challenges Plaintiffs' Counsel persuaded Defendants to pay nearly $1,000,000 to resolve this action.

**The Preclusion of Other Employment.**  As Plaintiffs' Counsel confirm, the two and a half years and 1,422 hours that Plaintiffs' Counsel committed to this litigation limited their ability to take on other, potentially profitable work.  (*See* Tindall Decl., ¶ 40; Douglas Decl., ¶ 6.)

**The Customary Fee.**  Courts in the Ninth Circuit have frequently approved attorneys' fee awards with lodestar-multipliers of two, three, or more.  *See Van Vranken v. Atlantic Richfield Co.,* 901

20

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

F.Supp. 294, 299 (N.D. Cal. 1995) (approving 3.6 multiplier); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–1054 (9th Cir. 2002) (approving 3.65 multiplier); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (approving 6.85 multiplier, finding it "well within the range of multipliers that courts have allowed"); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (5.2 multiplier).  Here, Plaintiffs' Counsel are not seeking *any* multiplier—asking instead for only a fraction of their lodestar.  In light of the range of lodestar multipliers often approved by courts within this Circuit, Plaintiffs' fee request is reasonable.

**The Contingent Nature of the Fee.**  Plaintiffs' Counsel undertook this class action on a purely contingent basis, with no assurance of recovering fees or litigation costs.  (*See* Tindall Decl., ¶ 40; Douglas Decl., ¶ 6.)  Despite this lack of assurance, Plaintiffs' Counsel expended considerable time and resources to prosecute the case on behalf of the Conditioning Class.

**The Results Obtained.**  As discussed above, the outstanding results obtained in this case support the reasonableness of the fee request, given the hurdles they faced.  Notwithstanding the challenges Plaintiffs faced, the Settlement commits Defendants to create a net settlement fund of $911,500 and pay an additional $12,000 to administer the Settlement.

**The Attorneys' Experience, Reputation, and Ability.**  Plaintiffs' Counsel's ability, reputation, and experience were critical to success in this case.  Plaintiffs' Counsel have successfully prosecuted many complex consumer class actions, recovering millions of dollars on behalf of consumers in such cases.  (*See* Tindall Decl., ¶¶ 26-29; Douglas Decl., ¶¶ 2-5.)  Plaintiffs' Counsel's reputation and skill in developing evidence supporting liability, damages, and the propriety of class certification were key to reaching a favorable settlement in a case against a well-represented group of Defendants.

In light of the quality of the representation provided by Plaintiffs' Counsel, the outstanding benefit to the Class obtained in the Settlement, the complexity of the case, and the risk of nonpayment, a $230,875 fee—that is, a small fraction of Plaintiff's Counsel's total lodestar—is reasonable.

## VII.    PLAINTIFFS' COST REQUEST IS REASONABLE AND PROPER

Plaintiffs' Counsel respectfully request reimbursement of $22,486.44, the out-of-pocket costs they incurred in litigating the Conditioning Claim in this matter.  (*See* Tindall Decl., ¶¶ 30,42; Douglas Decl, ¶ 8.)  These costs were reasonable and necessary to the successful prosecution of this case and

should be reimbursed. *Id.*; Fed. R. Civ. P. 23(h); *see also Covillo v. Specialtys Café*, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ("Class counsel is also entitled to reimbursement of reasonable expenses.") (citing *Van Vranken*, 901 F. Supp. at 299 (approving reasonable costs in class action settlement)).

Courts in the Ninth Circuit regularly reimburse Plaintiffs' Counsel for their litigation costs in prosecuting the litigation—and do so in addition to the attorneys' fees awarded in the case. *See, e.g.*, *Ruch v. AM Retail Grp.*, 2016 WL 5462451, *12 (N.D. Cal. Sept. 28, 2016) (James, J.) (awarding $18,211 in costs in addition to attorneys' fees); *Linney*, 1997 WL 450064, *7 (N.D. Cal. 1997) ($81,000 in costs awarded in addition to fees); *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, *9 (N.D. Cal. 2014) (awarding $9,000 in costs in addition to fees); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, *7 (S.D. Cal. 1990) ($714,826.19 in costs awarded in addition to fees).

The requested costs here are recoverable because they are both relevant to the litigation and reasonable in amount. *See In re Media Vision*, 913 F. Supp. at 1366. Since the outset of this case, Plaintiffs' Counsel have incurred $22,486.44 in unreimbursed costs prosecuting this case on behalf of the Class, including costs for the following: (1) court filing fees; (2) mailing and serving documents; (3) copying documents; (4) travel costs; (5) conducting computer research; (6) mediation fees. (*See* Tindall Decl., ¶ 30; Douglas Decl., ¶ 8.) Plaintiffs' Counsel put forward these out-of-pocket costs without assurance that they would ever be repaid. (*See* Tindall Decl., ¶ 40; Douglas Decl., ¶ 6.) These costs were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1177-1178 (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, online legal research fees, and mediation fees are relevant and necessary expenses in class action litigation).

## VIII.   PLAINTIFF'S REQUESTED SERVICE PAYMENT IS APPROPRIATE

Finally, Plaintiff's Counsel seeks a class representative service payment in the amount of $12,500. This payment is intended to be in recognition for the services he performed on behalf of the Class.

In its February 5 Order, the Court noted it is well-established in the Ninth Circuit that named plaintiffs in a class action are eligible for reasonable incentive payments (or service awards). The

1    award requested here is merited given the Plaintiff's extensive participation in and commitment to the

2    litigation.  As his declaration makes clear, Mr. Reynolds spent substantial time working with Plaintiff's

3    Counsel from the outset of the case until the present—including time spent assisting Plaintiff's Counsel

4    with developing the facts of the case and speaking with Class Members, reviewing and providing

5    suggestions on nearly all of the documents prepared in this case, traveling to and from northern

6    California for the mediation and taking three days off of work to travel to and from and attend the

7    mediation, and regularly meeting and speaking by phone with Plaintiff's Counsel throughout the

8    litigation.  Declaration of Plaintiff J. Jason Reynolds in Support of Motion for Preliminary Approval of

9    Class Action Settlement ("Reynolds Decl."), Dkt. # 73-1, ¶ 15(a) through (f).  Altogether, Mr. Reynolds

10   estimates that he spent between 154 and 221.5 hours on the litigation.  (*Id.,* ¶ 16.)  Mr. Reynolds also

11   spent over $1,200 in travel costs related to the mediation and the initial, cancelled mediation.  (*Id.,* ¶

12   15(e).)

13          The requested award is in line with class representative service awards in this District.  *See, e.g.,*

14   *Ross v. U.S. Bank Nat. Ass'n,* 2010 WL 3833922, at *4 (N.D. Cal. 2010) (Illston, J.) (awarding class

15   representative enhancement in the amount of $20,000 for each of the Class Representatives as fair and

16   reasonable); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *17 (N.D. Cal. 2007) aff'd, 331 F.

17   App'x 452 (9th Cir. 2009) (Chesney, J.) (approving award of $25,000 per class representative where

18   named plaintiffs provided help with informal discovery, and insight into an industry); *Bellinghausen v.*

19   *Tractor Supply Co*., 306 F.R.D. 245, 268 (N.D. Cal. 2015) (Corley, M.J.) (awarding named plaintiff a

20   total award of $15,000 to recognize service to the class and the signed release of claims in wage-and-

21   hour class action).[10]  In *Garner v. State Farm Mut. Auto. Ins.*, 2010 WL 1687832 (N.D. Cal. Apr. 22,

22   2010), Hon. Claudia Wilken awarded a class representative a "well justified" $20,000 incentive

23   payment, noting that "Numerous courts in the Ninth Circuit and elsewhere have approved incentive

24   awards of $20,000 or more where . . . the class representative has demonstrated a strong commitment to

25   the class."  *Id.* at *17 n.8 (citing cases).

26

27   _____

28   [10] The Settlement requires Plaintiff, like the plaintiff in *Bellinghausen*, to sign a release of all claims.
     Tindall Decl., Exh. A, ¶ 24.

1    Like the plaintiff in *Garner,* Plaintiff Reynolds "has demonstrated a strong commitment to the

2    class." *Id.* He has been heavily involved in this litigation from before it was filed through the filing of

3    the case, and up through the class certification brief, mediation, and eventual settlement. (Reynolds

4    Decl., ¶¶ 12, 15.) Plaintiff filed this suit because of his beliefs that Defendants should be accountable to

5    the DFM employees who were terminated in November 2016 and that these employees should be

6    compensated for the wages, PTO and expenses they should have been paid. (*Id.* ¶ 3.) At all times, Mr.

7    Reynolds endeavored to fairly represent the interests of his fellow former DFM employees and always

8    made decisions with the best interests of the Class Members in mind. (*See id.,* ¶¶ 7-8.)

9    In addition to the time, effort, and out-of-pocket costs that he spent on the litigation, Mr.

10   Reynolds also undertook risks in filing this case. He took a risk that being the lead plaintiff in a class

11   action lawsuit against his former employer would have a negative impact on his ability to find future

12   employment in this industry. (*Id.* at ¶ 4.) The biomedical device and technology industry in which Mr.

13   Reynolds works is a relatively small community, and Mr. Reynolds was concerned that the DFM

14   officers and board members whom he named as Individual Defendants would, after the dissolution of

15   Direct Flow, become officers and board members at other biomedical device companies that he would

16   need to apply to for jobs. *Id.* Mr. Reynolds also understood that by filing the action against DFM he

17   was undertaking a risk of having to pay a portion of the costs of the Defendants if he were to lose the

18   case. (*Id.* at ¶ 5.) Despite these risks, Mr. Reynolds was willing to prosecute the case through to

19   resolution.

20   In light of the time, effort, costs, and risks that Plaintiff undertook to litigate this action to a

21   successful resolution, Plaintiff's Counsel believes the requested service payment of $12,500 is

22   warranted.

23   / / /

24

25   / / /

26

27   / / /

28

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 4:17-cv-00204-KAW

1

## **CONCLUSION**

2       For the foregoing reasons, the parties respectfully request that the Court grant final approval of

3   the settlement and award Plaintiff's requested fees, costs, and representative service payment.

4

5   DATED: July 25, 2019                          Respectfully submitted,

6                                                 **GIBBS LAW GROUP LLP**

7                                                 *By:    /s/ Steven M. Tindall*

8
                                                  Steven M. Tindall
9                                                 smt@classlawgroup.com
                                                  505 14th Street, Suite 1110
10                                                Oakland, CA 94612
                                                  Telephone:  (510) 350-9700
11                                                Facsimile:  (510) 350-9701

12
                                                  **DOUGLAS LAW OFFICES**
13                                                John H. Douglas
                                                  jdouglas@douglaslegal.com
14                                                100 Pine Street, Suite 1250
                                                  San Francisco, CA 94111
15                                                Telephone: (415) 794-4751
                                                  Facsimile: (415) 795-3432
16

17                                                *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28