UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. JASON REYNOLDS,<br>　　　　Plaintiff,<br>　　v.<br>DIRECT FLOW MEDICAL, INC., et al.,<br>　　　　Defendants. | Case No. 17-cv-00204-KAW<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL, ATTORNEY'S FEES AND COSTS, AND SERVICE AWARDS**<br>Re: Dkt. No. 77 |

Plaintiff J. Jason Reynolds filed the instant putative class action against Defendants Direct Flow Medical, Inc. ("DFM"), Dan Lemaitre, John David Boyle, Gordon Bishop, Paul LaViolette, and Yuval Binur, alleging violations of various federal and California labor laws. (*See* First Amended Compl. ("FAC"), Dkt. No. 14.) The parties subsequently settled the case, and on March 7, 2019, the Court preliminarily approved the proposed settlement and directed that notice be sent to the class members. (Preliminary Approval Ord., Dkt. No. 75.) Pending before the Court is Plaintiff's motion for final approval of the settlement, attorney's fees and costs, and service award. (Plf.'s Mot. for Final Approval, Dkt. No. 77.) No opposition was filed.

Upon consideration of the parties' filings, as well as the arguments presented at the August 29, 2019 motion hearing, and for the reasons set forth below, Plaintiff's motion for final approval is GRANTED.

## I. BACKGROUND

### A. Factual Background

Defendant DFM is a medical technology company, who employed approximately 250 employees in California. (FAC ¶¶ 13, 15.) The individual Defendants were officers and/or members of the Board of Directors of Defendant DFM at the relevant times. (FAC ¶¶ 8-12.) In

2016, Defendant DFM began negotiating with Haisco, a Chinese company, for a capital infusion of $100 million. (FAC ¶ 30.) On November 16, 2018, the financing arrangements collapsed. (FAC ¶ 33.) On November 18, 2018, Defendants furloughed the majority of their workforce, placing their employees on involuntary leave without pay. (FAC ¶ 22.) Defendants informed their employees that they were being furloughed due to lack of funding, but that they might eventually receive their unpaid wages. (FAC ¶ 24.) Defendants also told their employees that Defendants were contemplating layoffs. (FAC ¶ 24.)

On November 30, 2016, Defendants terminated almost their entire workforce by e-mail. (FAC ¶ 25.) At the time of termination, terminated employees were still owed: (1) unpaid wages, including personal time off ("PTO"), (2) reimbursement for necessary business expenditures they had incurred, and (3) salary increases that had begun accruing but had been deferred. (FAC ¶¶ 26-27.) Defendants acknowledged these amounts but stated that they could not guarantee payment due to lack of funds. (FAC ¶¶ 26-27.) Defendants did not pay the amounts owed. (FAC ¶ 28.)

On January 9, 2017, Defendant DFM entered into a General Assignment for the Benefit of Creditors ("ABC"), a judicially-unsupervised process for liquidating insolvent debtors pursuant to California Code of Civil Procedure § 493.010. (FAC ¶ 35.) On February 7, 2017, Defendants' employees were notified of the ABC, and given a deadline to submit claims against Defendant DFM's liquidated assets. (FAC ¶ 36.) Although Plaintiff and other employees submitted claims, none received any payments. (Mot. for Prelim. Approval at 4, Dkt. No. 71.)

**B. Procedural Background**

On January 13, 2017, Plaintiff filed the instant putative class action. (Dkt. No. 1.) On March 27, 2017, Plaintiff filed the operative complaint, alleging that the layoffs violated the Federal Worker Adjustment and Retraining Notification Act ("federal WARN Act") and the California Worker Adjustment and Retraining Notification Act ("California WARN Act"). (FAC ¶¶ 53-67.) Plaintiff also sought waiting time penalties for failure to pay back wages and unused PTO, as well as reimbursement for the unpaid business expenses. (FAC ¶¶ 68-82.) Finally, Plaintiff brought a claim under the Private Attorneys General Act ("PAGA"). (FAC ¶ 93.)

In litigating the case, Plaintiff served written discovery requests on Defendants, and

2

deposed four individual Defendants. (Tindall Decl. ¶¶ 3, 4, Dkt. No. 77-1.) Plaintiff also obtained further information through a subpoena on the ABC. (Tindall Decl. ¶ 5.) In March 2018, the parties participated in mediation with Cynthia Remmers. (Tindall Decl. ¶ 9.) In preparation for the mediation, Defendant DFM provided information regarding Defendants' liability for the WARN Act violations, unpaid PTO, unreimbursed expenses, waiting time penalties, and retroactive pay increases. (Tindall Decl. ¶ 7.)

The parties did not resolve the case at mediation, and continued to participate in multiple phone call sessions with Ms. Remmers. (Tindall Decl. ¶ 9.) Plaintiff also filed his motion for class certification. (*See* Dkt. No. 64.) Before Defendants' opposition was due, the parties reached an agreement to resolve the case. (Tindall Decl. ¶ 9.)

On January 31, 2019, Plaintiff filed an unopposed motion for preliminary approval. On February 5, 2019, the Court requested supplemental briefing. (Dkt. No. 72.) On February 20, 2019, Plaintiff filed his supplemental brief. (Dkt. No. 73.) On March 7, 2019, the Court held a hearing on Plaintiff's motion for preliminary approval. (Dkt. No. 76.) That same day, the Court granted Plaintiff's motion.

### C. Settlement Agreement

Under the terms of the settlement agreement ("Settlement"), Defendants agree to pay a "Gross Settlement Amount" of $911,500. (Tindall Decl., Exh. A ("Settlement Agreement") ¶ 1(m).) Defendants shall also separately pay the actual costs of settlement administration. (Settlement Agreement ¶ 6.) Of the Gross Settlement Amount, Plaintiff seeks an attorney's fee award of 25%, or $230,875, costs of $22,486.44, and a service award for named Plaintiff of $12,500. (Settlement Agreement ¶¶ 20, 24; Plf.'s Mot. for Final Approval at 17, 22.) The Gross Settlement Amount also includes $13,672 in PAGA penalties; $10,254 shall be paid to the California Labor and Workforce Development Agency ("LWDA") and $3,418 will be part of the Net Settlement Amount for distribution to participating class members. (Settlement Agreement ¶ 25.) This leaves a Net Settlement Amount of $635,384.56. (Plf.'s Mot. for Final Approval at 7.)

A class member's share of the Settlement is calculated as two "Portions." (Settlement Agreement ¶ 13.) First, the settlement administrator calculates each class member's "Annualized

3

Compensation Ratio" by dividing the individual class member's annual compensation by the total annual compensation of all class members. The settlement administrator then multiplies the class member's "Annualized Compensation Ratio" by a figure representing 20% of the Net Settlement Amount to obtain "Portion 1" of the class member's settlement payment. (Settlement Agreement ¶ 13.)

Second, the settlement administrator will add: (1) the amount of the class member's accrued but unpaid PTO, (2) the amount of unreimbursed work expenses the class member incurred, and (3) the amount of compensation the class member should have received from approved but deferred pay raises. (Settlement Agreement ¶ 14.) The settlement administrator then divides this figure by the sum of these three amounts for all class members to obtain the individual class member's "Unpaid Compensation & Expenses Ratio." The class member's "Unpaid Compensation & Expenses Ratio") is multiplied by a figure representing 80% of the Net Settlement Amount to obtain "Portion 2" of the class member's settlement payment. If the class member has no unpaid PTO, unreimbursed expenses, or deferred raises, the class member's Portion 2 will be zero. (Settlement Agreement ¶ 14.)

Settlement payments are automatic, unless the class member opts out. (Settlement Agreement ¶ 10.) The settlement is non-reversionary. (Settlement Agreement ¶ 18.) If the total amount of the cashed settlement checks is less than 90% of the Net Settlement Fund, the uncashed amount will be re-distributed to the participating class members on a pro rata basis. (Settlement Agreement ¶ 16(a).) If the total amount of cashed settlement checks exceeds 90% of the Net Settlement Fund but is less than 100%, the remainder will be distributed to *cy pres* recipients California Human Development and Community Legal Aid SoCal. (*See* Preliminary Approval Ord. at 5.)

In exchange for the settlement payment, Plaintiff and class members release "all claims that were asserted in the operative complaint or that could have been asserted based upon the factual allegations set forth in the operative complaint." (Settlement Agreement ¶ 49.)

## II. LEGAL STANDARD

In deciding whether a settlement agreement is fair, adequate, and reasonable to all

4

concerned, the Court considers the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Ninth Circuit also counsels that while "strong judicial policy favors settlements, the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC*, 361 F.3d at 576 (internal quotation and modification omitted). Further, when a settlement agreement is negotiated prior to formal class certification, the court must be particularly vigilant for signs of collusion, as "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant. *Id.* at 947.

## III. DISCUSSION

### A. Final Approval

The Court finds that the *Churchill* factors support final approval of the Settlement.

First, as noted in the Court's preliminary approval order, Plaintiff's case presented significant risks. While the Settlement Agreement results in an 87% discount of Plaintiff's estimated "full-verdict value," this deep discount was an acknowledgment of the serious risks that Plaintiff faced both in establishing liability and obtaining recovery. (Preliminary Approval Ord. at 9-13.) For example, the federal WARN Act includes an "unforeseen business circumstances" exception that could preclude liability if the Court was to find that the breakdown of the financing agreement was unforeseeable and the cause of the shutdown. (*Id.* at 9-10.) Likewise, the California WARN Act has an exception to liability if the Employment Development Department determines that: (1) at the time that notice would have been required, the employer was actively

5

seeking capital or business; (2) the capital or business sought would have allowed the employer to avoid or postpone termination; and (3) the employer reasonably and in good faith believed that giving notice of the layoffs would have prevented the employer from obtaining the capital or business sought. Cal. Labor Code § 1402.5(a). Additionally, even if the Court found Defendant DFM liable for WARN Act violations, Defendant DFM is financially insolvent. (*See* Preliminary Approval Ord. at 10.) Thus, Plaintiff would have to demonstrate liability as to the individual Defendants to obtain financial recovery. Several district courts, however, have found that the federal WARN Act does not impose liability on individual employers, and Plaintiff has found no case imposing California WARN Act liability on an individual officer or director. (*Id.* at 10-11.) Plaintiff also faced a risk that WARN Act damages would be limited to the two weeks between Haisco informing Defendant DFM that it was not moving forward with its investment and the termination.

As to the remaining California Labor Code claims, Plaintiff would again have to show liability as to the individual Defendants, due to Defendant DFM's insolvency. While Plaintiff seeks to impose liability based on California Labor Code § 558.1, Plaintiff acknowledges that California courts have split on whether this statute creates a private right of action. (*See* Preliminary Approval Ord. at 12.) In light of these substantial risks facing Plaintiff, the Court finds that the first *Churchill* factor favors final approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Plaintiff would still have to seek class certification, and disputes exist as to the merits of the case. Further, even if Plaintiff was to prove liability as to Defendant DFM, Defendant DFM is financially insolvent and may be unable to pay any judgment. The Court concludes that the second *Churchill* factor favors final approval.

Third, it is not clear Plaintiffs faced any risks as to class certification, and Plaintiff does not appear to identify any such risks. This factor disfavors final approval.

Fourth, the amount offered by the Settlement, while a deep discount from the estimated full-verdict value, takes into account the significant risks discussed above and in the preliminary approval order. The Court finds that this factor favors final approval.

Fifth, it appears that Plaintiff has engaged in substantial investigation and discovery, including extensive written discovery and four depositions, in reaching the Settlement. (Plf.'s Mot. for Final Approval at 9; Tindall Decl. ¶ 3.) Defendant also provided Plaintiff information on Defendants' liability prior to the March 2018 mediation. (Tindall Decl. ¶ 10.) Additionally, Plaintiff interviewed class members, obtaining two dozen declarations in support of the motion for class certification. (Tindall Decl. ¶¶ 14, 16.) The Court concludes that the discovery conducted was adequate to allow the parties to make a fully informed decision on settlement. Thus, this factor favors final approval.

Sixth, Class Counsel supports the Settlement as fair. (Tindall Decl. ¶ 8.) Further, Class Counsel is experienced in this area; the primary attorneys in this case have significant experience in employment class actions. (*See* Tindall Decl. ¶¶ 23-27; Douglas Decl. ¶¶ 3-5, Dkt. No. 77-6.) Class Counsel's experience and support for the Settlement favors final approval.

Seventh, notice of the settlement was provided to the LWDA, as well as the Class Action Fairness Act ("CAFA") notice to all applicable state officials. No government entity has lodged an objection to the settlement. The Court finds that this *Churchill* factor favors final approval.

Finally, the reaction of the class members to the proposed settlement has been positive. Per the settlement administrator, the class list included 202 class members. (Lawless Decl. ¶ 4, Dkt. No. 77-7.) The settlement administrator reports no undeliverable notice packets, as the administrator was able to locate a mailing address for each class member. (Lawless Decl. ¶ 8.) As of July 25, 2019, there were no requests for exclusion or any objections. (Lawless Decl. ¶¶ 9-10.) There were six pending disputes under review; at the final approval hearing, the parties confirmed that the disputes were resolved, and that the claimants have been or will be informed of the results. As no class members have opted out and no individuals have objected to the Settlement terms, this last *Churchill* factor favors final approval.

Overall, the *Churchill* factors favor approval of the settlement. Additionally, the Court finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion. Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendants.

7

Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the Settlement is fair, adequate, and reasonable. Accordingly, the Court GRANTS Plaintiff's motion for final approval.

### B. Attorney's Fees and Costs

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.*

Here, Class Counsel seeks 25% of the common fund, or $230,875. (Plf.'s Mot. for Final Approval at 10.) The Court finds that this request is reasonable, given that Class Counsel seeks the benchmark amount and that no class member has objected to the proposed fee award. This case was also extremely risky for Class Counsel. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Further, while again the Settlement Amount represents a deep discount, there were substantial risks, including the possibility of no recovery even if liability was established as to Defendant DFM due to its financial insolvency. The Court concludes that under the percentage method, the attorney's fees requested is reasonable.

The Court also applies the lodestar method as a cross-check on the percentage method. Class Counsel asserts the following hourly rates and hours billed through July 2019:

| Attorney: | Hourly Rate: | Hours Billed: | Total: |
|---|---|---|---|
| Steven Tindall | $740 | 414.0 | $306,360.00 |
| Caroline Corbitt | $430 | 585.5 | $251,765.00 |
| John H. Douglas | $675 | 401.3 | $270,877.50 |
| Paralegals (Gibbs Law Group) | $280 | 21.6 | $6,048.00 |
| | | | $835,050.50 |

8

(Tindall Decl. ¶ 33; Douglas Decl. ¶ 7.) Class Counsel has also provided declarations explaining counsel's experience and qualifications, as well as a breakdown of hours spent. (Tindall Decl. ¶¶ 23-37; Douglas Decl. ¶¶ 3-5, 7.)

The Court finds that based on the lodestar method, the amount sought is reasonable. Class Counsel essentially seeks an amount that is $604,175.50 less than the asserted lodestar, or a .28 multiplier.[1] Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorney's fees sought by Class Counsel is reasonable. The Court therefore GRANTS Plaintiff's request for an award of attorney's fees in the amount of $230,875.00.

### C. Attorney's Costs

Plaintiff seeks $22,486.44 in costs actually incurred. (Plf.'s Mot. for Final Approval at 21.) These costs include filing fees, mediation costs, travel expenses, deposition costs, legal research, and copying and postage. (Tindall Decl. ¶ 30; Douglas Decl. ¶ 8.) Defendants do not oppose Class Counsel's request. The Court finds that the costs requested were reasonably incurred, and GRANTS Plaintiff's request for costs in the amount of $22,486.44.

### D. Service Award

Finally, Plaintiff requests a service award of $12,500 for named Plaintiff. (Plf.'s Mot. for Final Approval at 22.) Service awards to named plaintiffs are "fairly typical in class action cases." *Rodriguez v. W Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Id.* (internal citation omitted). "Several courts in this District have indicated that [service] awards of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, Case No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012). In *Ko v. Natura Pet Products, Inc.*, for example, the district court rejected the requested award of $20,000 for a plaintiff who had spent approximately 50 to 100 hours on the case. No. 09-cv-2619-

---

[1] Given the substantial negative multiplier, the Court does not determine whether the hourly rates sought are reasonable. Even halving the hourly rate would result in a significantly higher lodestar than the amount sought.

9

SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012). The district court explained that the "$20,000 [service award] is quite high for this district," and concluded that the requested award was excessive. Instead, the district court awarded the standard $5,000, noting that the named plaintiff would "still be compensated handsomely for her time, the $5,000 award results in either a $100 or $50 hourly rate for the 50-100 hours Plaintiff expended on this case." *Id.* Similarly, in *Ontiveros v. Zamora*, the district court rejected a $20,000 incentive award that would have compensated the named plaintiff at a $73.80 hourly rate, instead awarding a $50 hourly rate. 303 F.R.D. 356, 366 (E.D. Cal. 2014). In justifying this downward departure, the district court explained that "[o]vercompensating named plaintiffs at the expense of a reduction in the common fund available to class []members could encourage collusion at the settlement stage of class actions where a named plaintiff's interest naturally diverges from that of the class, compromising his role as a judge of adequacy." *Id.*

Here, the $12,500 service award sought is greater than the presumptively reasonable $5,000 award in this district. The Court, however, finds that the amount is reasonable in this case. Plaintiff worked with Class Counsel on drafting the complaints, spoke regularly with his fellow employees about providing information, provided documents, introduced Class Counsel to his colleagues, spoke to Class Counsel before the individual Defendants' depositions to explain that person's position in the company, and helped Class Counsel prepare for the mediation. (Reynolds Decl. ¶¶ 10-13.) Plaintiff also attended the mediation, incurring costs of over $1,223. (Reynolds Decl. ¶¶ 13, 15(e).) Plaintiff estimates that he spent between 154 and 221.5 hours on the litigation. (*See* Reynolds Decl. ¶¶ 15-16.)

Taking into account Plaintiff's costs, the Court finds that a $12,500 service award would result in an hourly rate between $50.91 and $73.23. While on the higher side, courts have awarded rates between $50 to $100; further, if Plaintiff's actual hours are at the higher end of his estimate, Plaintiff will be at the $50 rate generally approved of in this district. Accordingly, the Court GRANTS Plaintiff's request for a $12,500 service award for named Plaintiff.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for final approval,

attorney's fees and costs, and a service award.

The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated: September 3, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge